## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DANIELLA MONTESANO, individually and on behalf of others similarly situated**, <br><br> *Plaintiff,* <br><br> v. <br><br> **THE CATHOLIC UNIVERSITY OF AMERICA**, <br><br> *Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Case No. 1:20-CV-01496-DLF |

## FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Daniella Montesano, ("Plaintiff") by and through undersigned counsel, brings this action against Defendant, The Catholic University of America ("Defendant" or the "University") on behalf of herself and all others similarly situated, and makes the following allegations based upon information, attorney investigation and belief, and upon Plaintiff's own knowledge:

## PRELIMINARY STATEMENT

1.     Plaintiff brings this case as a result of Defendant's decision not to issue appropriate refunds for the Spring 2020 semester after canceling in-person classes and changing all classes to an online/remote format, closing most campus buildings, and requiring all students who could leave campus to do so as a result of the Novel Coronavirus Disease ("COVID-19").

2.     This decision deprived Plaintiff and other members of the Classes from recognizing the benefits of on-campus enrollment, meals, access to campus facilities, student activities, and other benefits and services in exchange for which they had already paid fees and tuition.

3.     Defendant has either refused to provide reimbursement for the tuition, fees, and other

costs that Defendant failed to provide during the Spring 2020 semester or has provided inadequate and/or arbitrary reimbursement that does not fully compensate Plaintiff and members of the Classes for their loss.

4.      This action seeks refunds of the amount Plaintiff and other members of the Classes are owed on a *pro-rata* basis, together with other damages as pled herein.

## PARTIES

5.      Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

6.      The Catholic University of America is a private institution of higher learning located in Washington, DC.

7.      Upon information and belief, Defendant has an estimated endowment that exceeds $273 million.[1]

8.      Moreover, upon information and belief, Defendant was allocated more than $1.1 million of federal stimulus funds under the CARES Act.[2] The CARES Act directs that institutions must use at least half of the funds they receive to provide emergency financial aid grants to students for expenses related to the disruption of campus operations due to COVID-19.

9.      Plaintiff was enrolled as a full-time student in Defendant's undergraduate program, studying business during the 2019-2020 academic year.  Plaintiff is an individual and a resident and citizen of the state of New Jersey.

## JURISDICTION AND VENUE

---

[1] https://www.nacubo.org/-/media/Nacubo/Documents/EndowmentFiles/2019-Endowment-Market-Values--Final-Feb-10.ashx?la=en&hash=9E941CF13A17783282F46626C72FE7AFB63F9D82

[2] https://www.catholic.edu/resources/consumer-information/cares-act-disclosure/index.html

10.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

11.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

12.     This Court has personal jurisdiction over Defendant because Defendant conducts business in Washington, D.C. and has sufficient minimum contacts with Washington, DC.

13.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## BACKGROUND FACTS

14.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

15.     Plaintiff was enrolled as a full-time student for the Spring 2020 academic semester at Defendant's institution.

16.     As a precondition for enrollment, Plaintiff was required to and did pay substantial tuition for the Spring 2020 semester either out of pocket or by utilizing student loan financing, as did all members of the putative Tuition Class (defined below).

17.     There are hundreds, if not thousands, of institutions of higher learning in this country.

18.     Some institutions of higher learning provide curriculum and instruction that are offered on a remote basis through online programming which do not provide for physical attendance by the students.

19.     Defendant's institution offers both in-person, hands-on programs, and fully online distance-learning programs, which it markets and prices as separate and distinct products.

20.     Plaintiff and members of the proposed Tuition Class did not choose to attend another institution of higher learning, or to seek an online degree, but instead chose to attend Defendant's institution and specifically chose the on-campus program and enrolled on that basis.

21.     Defendant has recognized and admitted the inherent difference between its in-person and online products, and markets them separately throughout its website and other publications and circulars, including its academic catalogs.

22.     Accordingly, when students pay tuition in exchange for enrollment in the on-campus program, such students expect to receive, and Defendant has promised to provide, benefits and services above and beyond basic academic instruction, which include but are not limited to:

- Face-to-face interaction with professors, mentors, and peers;
- Access to facilities such as computer labs, study rooms, laboratories, libraries, etc.;
- Student governance and student unions;
- Extra-curricular activities, groups, intramurals, etc.;
- Student art, cultures, and other activities;
- Exposure to community members of diverse backgrounds, cultures, and schools of thought;
- Social development and independence;
- Hands-on learning and experimentation; and
- Networking and mentorship opportunities.

23.     Plaintiff's education was changed from in-person, hands-on learning to online instruction during the Spring 2020 term.

24.     When this happened, Plaintiff was forced from campus and deprived of the benefit of the bargain for which she had paid, and in exchange for which Defendant had accepted, tuition as set forth more fully above.

25.     In addition to tuition, Defendant charges and Plaintiff and members of the Fees Class paid certain mandatory fees, including but not limited to a(n):

- Activities Fee;

- Technology Fee.

26.     The Activities Fee is charged to all on-campus undergraduate and graduate students registered for classes[3]

27.     Notably, those Activities Fees are not paid by students studying abroad or those enrolled in fully online programs[4]:



## MANDATORY FEES

| Activities Fees (rates set by student government) | |
| --- | --- |
| Undergraduate, full-time, per semester | $128 |
| Undergraduate, part-time, per semester | $64 |
| Graduate (non-Law), per semester | $50 |
| *Activities Fees are waived for students studying abroad and for graduate students in fully-online programs.* | |

28.     The Technology Fee is charged to all undergraduate, graduate, and law (both full-time and part time) students per semester.

---

[3] https://enrollment-services.catholic.edu/costs/index.html#Fees

[4] Id.

29.     Plaintiff was required to and did pay all mandatory fees associated with her Spring 2020 enrollment.

30.     In addition to the broad-based mandatory fees described above, Defendant charges a myriad of other program or course specific fees.

31.     As a result of the actions and announcements of Defendant during the Spring 2020 term, Plaintiff and members of the Fees Class (defined below) no longer had the benefit of the services for which these fees were paid. For example, the buildings were closed, student events and activities were cancelled, student organizations were no longer operational, and students who moved home no longer had the need for or access to the various health facilities.

32.     At Defendant's request and direction, University students moved out of on-campus housing and lost access to any campus facilities and services thereon throughout the remainder of the Spring 2020 term.

## **FACTUAL ALLEGATIONS**

33.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

34.     Upon information and belief, Defendant's Spring term began with the first day of classes on or about January 13, 2020.[5]

35.     Upon information and belief, Defendant's Spring term was scheduled to conclude with the last day of examinations on or about May 9, 2020 and commencement ceremonies on May 16-22, 2020.[6]

---

[5] The Catholic University of America Academic Calendar: Spring (Second) Semester 2020:
https://enrollment-services.catholic.edu/academic-calendar/academic-calendar-spring-2020-revised1.pdf
[6] Id.

36.     Accordingly, Defendant's Spring semester was scheduled and contracted to consist of approximately 117 days.

37.     Defendant's Spring recess began on or about March 9, 2020 and was supposed to end on or about March 15, 2020, with students resuming in person classes on March 16, 2020.[7]

38.     However, as a result of the COVID-19 pandemic, Defendant announced major changes to this schedule in an announcement from the University's President on March 11, 2020.  The University announced that Spring break would be extended for 2 days through March 16 and 17, and that classes would resume on March 18, 2020 in a fully online format.[8]

39.     Originally, classes were only scheduled to move online through March 30, 2020,[9]  but on March 18, 2020, the University announced that the transition to online instruction would remain through the end of the Spring semester and that "closing down most aspects of campus life" was to occur for the remainder of the semester.[10]

40.     In this same announcement, students were reminded that the University "closed our residence halls, called off all athletic games and practices, and cancelled or postponed many in-person events, conferences, performances, and meetings" [and] as of that week "began to give broad permissions to many of our staff to work from home."[11]

41.     Accordingly, Plaintiff and Members of the proposed Classes were deprived of approximately 46% of the in-person instruction, activities, and on-campus services for which they had bargained and already paid.[12]

---

[7] Id.
[8] Coronavirus Update form President John Garvey (March 11, 2020):
https://communications.catholic.edu/coronavirus/previous-updates.html
[9] Id.
[10] Coronavirus update Online Instruction to Continue Message from President John Garvey (March 18, 2020): Id.
[11] Id.
[12] Representing the time between March 16, 2020 when on-campus, in-person instruction and access was to resume through May 9, 2020, the final day of final exams.

42.     Nonetheless, the University has refused and continues to refuse to offer any pro-rated discount or refund on Spring tuition or fees.

43.     Although Defendant offered some level of academic instruction via online classes for the Spring 2020 term, Plaintiff and members of the proposed Tuition Class were deprived of the benefits of on campus learning as set forth more fully above – the service and access they bought and paid for.

44.     These realities notwithstanding, Defendant has refused and continues to refuse to offer any refund whatsoever with respect to the tuition and fees that were paid for the Spring 2020 semester.

45.     The University has acknowledged that off-campus, online instruction has a different market value than the on-campus experience.[13]  For example, in the two graduate programs where they offer graduate credit hours on an a la carte basis both on-campus and in fully online programs the on-campus cost is 34% higher than the fully-online version.[14]

46.     Although Defendant has refused and continues to refuse to reduce tuition for Spring semester students, Defendant announced that students expecting to take Summer classes in person (who will now be forced to take them online) will be charged less per credit hour than regular term tuition:[15]

COVID-19 Information

All summer sessions will be offered through Catholic University's virtual learning environment. Course dates will not change. Courses that were previously scheduled to meet in person will now meet online during the same time period.

---

[13] 2019-2020 Tuition, Fees and Other Charges:  https://enrollment-services.catholic.edu/costs/tuition-fees/2019-2020.html

[14] Id.  The combined cost per credit hour for graduate students in the on-campus version of the Metropolitan School of Professional Studies and School of Nursing was $2,895 for 2019-20. The cost for the fully-online versions of those programs was $2,155, representing an actual cost difference of $740.00 per credit hour.

[15] Summer Sessions COVID-19 Information Bulletin:  https://summer.catholic.edu//index.html

**Save Money and Make Progress Towards Your Degree**

Summer courses are less expensive per credit hour than regular-term tuition. Many courses will be available to help you make progress toward your goals.

47.     Likewise, Defendant has admitted that some refunds are owed by virtue of their Fall 2020 refund[16]:

In regard to tuition charges and room and board refunds, for these most pressing questions, I am announcing the following policy updates for the fall 2020 semester:

- Undergraduate and graduate students who anticipated attending at least some of their classes in-person or in a hybrid mode, and who will this semester attend classes exclusively online, will receive a 10% refund of their fall tuition costs. There is no tuition reduction for programs that are traditionally fully online.
- Students who planned to live on campus and are no longer eligible to do so will receive a full refund for on-campus room and board.

48.     Notably, President John Garvey acknowledged in his March 27, 2020, bulletin that reimbursements were among the most pressing topics for students and families bearing the cost of services students have not received as a result of the coronavirus:[17]

I know that the topic of reimbursements is among the most pressing for students. This has been a priority for us since it first became clear that we wouldn't resume classes on campus this semester.  We want to make sure that families do not bear the costs of services students have not received as the result of the coronavirus. Here is the plan.

49.     Nonetheless, Defendant has refused and continues to refuse to pro-rate or refund any portion of the mandatory fees set forth in Paragraph 24:[18]

---

[16] Catholic University Announces Tuition Adjustments for Fall 2020 Semester:
https://communications.catholic.edu/coronavirus/index.html#tuition
[17] Coronavirus Update Bulletin (March 27, 2020):
https://communications.catholic.edu/coronavirus/previous-updates.html
[18] Id.

# Coronavirus update | Spring 2020 Student Account Credits/Refunds

March 27, 2020

Credits will not be given at this time for tuition or for other fees, because these funds (for labs, technology, etc.) will still be used for their intended purposes, to maintain the academic and student experience at the high level to which the University is committed.

## CLASS ACTION ALLEGATIONS

50.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

51.    Plaintiff brings this action on behalf of herself and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Classes:

> **The Tuition Class:**
>
> All people who paid tuition for or on behalf of students enrolled in classes at the University for the Spring 2020 semester who were denied live in-person instruction and forced to use online distance learning platforms for the latter portion of that semester.
>
> **The Fees Class:**
> All people who paid fees for or on behalf of students enrolled in classes at the University for the Spring 2020 semester.

52.    Excluded from the Classes are the Fellows of the Catholic University of America and any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and Court staff assigned to this case.  Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

53.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

54.     This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

### Numerosity: Fed. R. Civ. P. 23(a)(1)

55.     The members of the Classes are so numerous and geographically dispersed that individual joinder of all members is impracticable. Plaintiff is informed and believes that there are thousands of members of the Classes, the precise number being unknown to Plaintiff, but such number being ascertainable from Defendant's records. Members of the Classes may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

### Commonality and Predominance: Fed. R. Civ. P.23(a)(2)

56.     This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Classes, including, without limitation:

      (a)     Whether Defendant engaged in the conduct alleged herein;

      (b)     Whether there is a difference in the value between enrollment in an online distance learning program and enrollment in a live, on-campus instructional program;

      (c)     Whether Defendant breached its contracts with Plaintiff and the other

members of the Tuition Class by retaining the portion of their tuition representing the difference between the value of online distance learning and on-campus, in-person enrollment;

(d)     Whether Defendant was unjustly enriched by retaining tuition payments of Plaintiff and the Tuition Class representing the difference between the value of online distance learning and on-campus, in-person enrollment;

(e)     Whether Defendant breached its contracts with Plaintiff and the other members of the Fees Class by retaining fees without providing the services, benefits, and/or programs the fees were contracted to cover;

(f)     Whether Defendant was unjustly enriched by retaining fees of Plaintiff and the other members of the Fees Class without providing the services, benefits, and/or programs the fees were intended to cover;

(g)     Whether Defendant committed conversion as detailed above against Plaintiff and the other members of the Tuition Class;

(h)     Whether Defendant committed conversion as detailed above against Plaintiff and the other members of the Fees Class;

(i)     Whether certification of any or all of the classes proposed herein is appropriate under Fed. R. Civ. P. 23;

(j)     Whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

(k)     The amount and nature of relief to be awarded to Plaintiff and the other members of the Classes.

**Typicality: Fed. R. Civ. P.23(a)(3)**

57.     Plaintiff's claim is typical of the other Class member's claims because, among other things, all Class members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.

### Adequacy: Fed. R. Civ. P.23(a)(4)

58.     Plaintiff is an adequate Class representative because her interests do not conflict with the interests of other members of the Class she seeks to represent.  Plaintiff has retained counsel competent and experienced in complex litigation; and Plaintiff intends to prosecute the action vigorously.  The Classes' interests will be fairly and adequately protected by Plaintiff and her counsel.

### Superiority: Fed. R. Civ. P. 23(b)(3)

59.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct.

60.     Even if Class members could afford individual litigation, the Court system likely could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

### Certification of Specific Issues: Fed. R. Civ. P. 23(c)(4)

61.     To the extent that a Class does not meet the requirements of Rules 23(b)(2) or (b)(3), Plaintiff seeks the certification of issues that will drive the litigation toward resolution.

**Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)**

62.     The University has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the Class members as a whole.

**COUNT I**
**BREACH OF CONTRACT**
**(Plaintiff and Other Members of the Tuition Class)**

63.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

64.     Plaintiff brings this count on behalf of herself and other members of the Tuition Class.

65.     Plaintiff and the other members of the Tuition Class entered into contracts with Defendant which provided that Plaintiff and other members of the Tuition Class would pay tuition for or on behalf of students and, in exchange, Defendant would enroll such students and admit them to campus; granting them the full rights and privileges of student status, including but not limited to access to campus facilities, access to campus activities, and live, in-person instruction in a physical classroom.

66.     Defendant's enrollment policy states that, "Undergraduate students registered for 12 or more semester hours are full-time students. They are required to register as such and to pay the corresponding tuition. The certification to governmental agencies of all students - citizen and noncitizen - as full-time students of the university is determined by full-time academic activity as

attested by the cognizant academic officer, not by payment of full-time tuition. Such certification is the responsibility of the University registrar."[19]

67.     The rights and privileges of student status that comprise the contractual terms are set forth by Defendant through its website, academic catalogs, student handbooks, correspondence, marketing materials and other circulars, bulletins, and publications.

68.     These rights and privileges form the basis of the bargain on which prospective students agree to accept Defendant's offer of enrollment in exchange for the payment of tuition and fees.

69.     One such right is the ability to be physically present on campus, and fully enjoy the facilities, services, and opportunities provided thereon, including the campus' location and surrounding opportunities within Washington, DC.

70.     Defendant does not deny that the physical location of its campus is a main benefit of enrollment that attracts many students to the University.

71.     Defendant's main home page on its website states, "The Catholic University of America is a national research university with 5,700 undergraduate and graduate students in more than 250 academic programs on a residential campus in the heart of Washington, D.C."[20]

72.     Defendant's website and recruitment brochures are the primary means through which Defendant targets prospective new students and attempts to influence such students to apply for enrollment at the University as opposed to other institutions of higher learning.

73.     Indeed, Defendant's website has a section called "Discover D.C. with CatholicU" where visitors are directed to click the "Why Study in D.C.?" link.[21]

---

[19] https://policies.catholic.edu/students/academicundergrad/enrollundergradfull.html
[20] https://www.catholic.edu/index.html
[21] https://www.catholic.edu/about-us/the-heart-of-washington-d-c/go-to-college-dc.html

74.     Defendant goes on to state, "Imagine studying politics 10 minutes away from Capitol Hill. Or nursing 10 miles away from the National Institute of Health. Or law four miles from the Supreme Court of the United States. What about architecture? You'll be living in a city designed by Pierre Charles L'Enfant. A city where architecture is the first feature. Or media? Every news agency in the world is here. Interested in library and information science? Take a class within the walls of the Library of Congress."[22]

75.     Further, Defendant states that, "Catholic University is located in the heart of Washington, D.C., a city of politics, parades, festivals, museums (did we mention most of them are free?), professional sports, theater, concerts, shopping, parks, restaurants, monuments, waterways, and trendy neighborhoods. Ranked the top place to visit in 2020 by The New York Times, Washington, D.C., has a thriving culture that has something to offer everyone."[23]

76.     At the bottom of the page, visitors are able to click on 29 individual programs to find out "why you should study that subject in D.C. at the Catholic University."[24]

77.     Defendant also claims, "We are a welcoming community engaged in high-energy student life. Our residential campus is large, green, and beautiful – and it's just minutes from downtown Washington, D.C."[25]

78.     Likewise, Defendant's Distinctions page goes on to state that, "Next to Rome, there is simply no place in the world quite like The Catholic University of America. History, geography and providence have put us at the heart of the Church in America, and the heart of the capital of the United States — an intersection that will vastly expand your intellectual and spiritual

---

[22] Id.
[23] Id.
[24] Id.
[25] https://www.catholic.edu/student-life/this-is-catholicyou/index.html

horizons as a part of the new generation of Catholic Minds."[26]

79.    Defendant then lists the following distinctions:

- We are unique among all of the country's Catholic colleges and universities in that we are *the* national university of the Catholic Church in the United States chartered by the Holy See and founded by the Catholic bishops.

- The University is located in the heart of Washington, D.C.

- From the D.C. Metrorail system, adjacent to campus, you're just a 10-minute Metrorail ride from Capitol Hill, the Smithsonian Institution, Supreme Court, Library of Congress, and Union Station.

- Our campus sits on 176 stunningly beautiful acres—the largest campus in Washington, D.C.

- The University was founded in 1887 as a *graduate institution, not just a college*. The result is a scholarly experience, not merely a college experience. As an undergraduate, the serious student will find unique opportunities to conduct scholarly and scientific research in their fields of study, working closely with faculty.

- All 12 of our schools grant graduate degrees.  Ten award undergraduate degrees: architecture and planning, arts and sciences, business, engineering, music, nursing, philosophy, professional studies, social work, and theology and religious studies.

- All undergraduate degrees combine a base curriculum in the liberal arts with more in-depth courses from their major fields of study.

- First-Year Experience introduces you to philosophy, theology, rhetoric, and logic through study in small, supportive learning communities. Your coursework will engage you in thinking about, discussing, and writing about the great questions that have shaped human history and that continue to confront us today.

- Students in all majors can find semester, yearlong, or summer-only opportunities for study on five continents and at The Rome Center of The Catholic University of America and Australian Catholic University.

---

[26] https://www.catholic.edu/about-us/distinctions/index.html

- Catholic University is a Division III athletic institution with 25 varsity programs. Nearly 20 percent of our undergraduate student population are varsity athletes.[27]

80.    Through these publications, Defendant markets to and enrolls students in two separate and distinct products.

81.    Defendant specifically markets certain classes and degree programs as being offered on a fully online basis.

82.    Indeed, Defendant dedicates an entire section of its website to these programs, known as "The Catholic University of America Online" which can be accessed at

https://www.catholic.edu/academics/online/index.html.

83.    Conversely, Defendant's publications with respect to non-online classes are full of references to the on-campus experience, including numerous references to student activities; campus amenities; class size and student/teacher ratios; campus diversity, campus location, and the like.

84.    When visitors enter the "Student Life" page on Defendant's website, they are greeted with the words, "Experience College Life in Washington, D.C."[28]

85.    Defendant's website goes on to state:

> We offer plenty of options for a vibrant residential college experience. Our academic year begins and ends with campus-wide celebrations. Campus life is buzzing with events every week: performing arts, sporting events, lectures, fundraisers, service days, fairs, retreats, dances, game nights, concerts, and more.
>
> More than 100 student organizations offer something for everyone. If politics is your thing, you can join the College Democrats or the College Republicans. You might want to complement your academic interests through organizations such as the Spanish Club or the Chemistry Club. Performers will be interested in CenterStage Theatre Company or Redline A Cappella. If you are looking to serve there are plenty of options, including Best Buddies and Relay for Life.

---

[27] Id.
[28] https://www.catholic.edu/student-life/index.html

Service and faith are at the heart of our mission, and we welcome students of all religious backgrounds. The Office of Campus Ministry sponsors service opportunities and programs and events. We offer daily service opportunities in the D.C. community, and domestic and international mission trips.

Our campus is the largest and greenest in Washington, D.C. You'll find places to study under a tree, basketball courts for pick-up games, wide-open lawns for games of Frisbee, newly renovated, energy-efficient buildings with historic character, and residence halls that offer a variety of living options. The campus is part of the charming Brookland neighborhood. We're in our own small college town with a restaurants, artist studios, new apartments, and farmer's market right nearby.

The Center for Academic and Career Success and our active alumni network are dedicated to helping you secure coveted jobs and internships, many of them a short Metro ride away in downtown D.C.

Become a Cardinal and take flight at Catholic University.[29]

86.    Defendant's Student Life page also displays a "vibrant residential college experience" hyperlink, where visitors can click and read a spotlight story from a 2019 junior media and communications major and theology minor at Catholic University.[30] The story states:

As a junior media and communications major and theology minor here at Catholic University, I've had three wonderful years so far exploring, learning, and engaging with my surroundings. Reflecting back on my decision to go here, I know that being part of this historic and beautiful community has afforded me some of my favorite life memories.

The campus at CatholicU was an attractive quality when I was applying to college. Our campus is 176 acres, which is the largest private land ownership in Washington, D.C. It's hard to miss us with a massive, beaming basilica on the edge of campus.

Studying at Catholic University has been an incredible opportunity for spiritual growth. I always have a place to go to Mass and adoration, sometimes even 20 feet from my dorm.

I always feel safe on campus with an abundance of public safety officers and friendly faces. My on-campus apartment in Millennium North/South has been

---

[29] Id. Defendant's text on its Student Life page is filled with hyperlinks where visitors can click to learn more information about a given subject.
[30] https://communications.catholic.edu/news/spotlight/campus-experience.html

great to help me be more independent while still participating regularly in residence life activities. We have a kitchen and cozy living room we've decorated with fluffy pillows, candles and plants, a bean-bag chair, and a Wii to have Mario Kart tournaments in our free time.

As an aspiring journalist, I wrote for The Tower student newspaper on campus for three years, had an internship with the University photographer, and now I'm writing for the CatholicU website through my internship at the communications office located in historic Father O'Connell Hall, a building that looks like it belongs in a Harry Potter novel.

It has been exciting to photograph and write about student life. Events and campus life are full of energy, laughter, and friends enjoying one another's company. If I'm not interviewing someone with pen and paper at the office, I'm sitting on the patio furniture outside the Pryz or maybe on the stone risers at the Centennial Village fountain observing student life and recording what I can. Through the lens of my camera and writing, I've been able to capture those moments to show my love of this place I call home.

Working at the Office of Campus Activities my sophomore year as an events and marketing lead, I learned that I loved being a part of the Catholic University culture, especially the events that happen regularly.

My favorite event that happens at the beginning of each year is Capital Fest. It's a free concert in the McMahon Parking Lot usually with a well-known headliner. This year we had Jesse McCartney, and my inner 12-year-old was incredibly happy about it.

Food trucks line the parking lot and the smell of Swizzlr hot dogs fills the air as students line up down the sidewalks and enter the concert dressed up and dancing. Everyone has a beaming smile at Capital Fest, because what's better than food trucks and a free concert? Program board spends all day setting up the stage, lights, and sound at the heart of campus. The payoff is a huge turnout and unforgettable memories.

Another event I love to take part in every year is Halloween on campus. Hosted by Campus Ministry, members from our surrounding community bring their kids to trick-or-treat, do crafts, and jump on a moon bounce. It's fun for us as students to dress in costumes and serve the families of this community by providing an exciting, safe, and free Halloween activity for their children.

Around Christmas time, we have an annual tree lighting out front of McMahon Hall. It's a massive evergreen tree decorated with white lights. We all hope Gus Garvey, President John Garvey's dog and our beloved second University mascot, makes an appearance. Garvey gives remarks, our Chaplain Father Jude leads a prayer, and we sing Christmas carols.

The students set up an amazing Christmas village in Centennial Village where we decorate Christmas cookies, skate on a fake ice rink, and even take horse-drawn carriage rides around campus. If we're lucky, there's snow dusting the basketball court where everything is set up. Everyone goes crazy during the first snowfall of the season!

To close off the year, we have our beloved Cardinal Palooza. With carnival rides, games, and food, the last day of classes go out in style. Students will stand in line hours before the event for a chance to grab the coveted free Cardinal Palooza T-shirt.

Even when there are no big events happening on campus, being right next to a Metro stop has made my time spent exploring the city easy. We're three stops from Union Station and the U.S. Capitol and only eight stops from the Smithsonian station on the mall, which leads directly to the museums and monuments.

Aside from the many local monuments and museums, I love exploring the rest of the city. My favorite spot to spend time off campus is the neighborhood of Georgetown. There are so many beautiful, historical houses. The restaurants, festivals, music, and waterfront are the perfect group getaway without having to stray too far from campus.

Washington, D.C., is a vibrant, growing city and I'm glad that I get to experience it from my campus home at Catholic University. The green space, beautiful buildings and study spaces, and fun, free events are a perfect supplement to my education. I am sad to be leaving in just one short year, but I know that my time spent at Catholic University has prepared me well for my future![31]

87.    Visitors who are seeking further information about the University are directed to a page entitled "This is CatholicYOU."[32]

88.    Here, Defendant markets the on-campus experience by stating, "Come take flight with us," and states the following:

- Meet new friends my participating in one of the 20+ club and intramural sport teams.

---

[31] https://communications.catholic.edu/news/spotlight/campus-experience.html
[32] https://www.catholic.edu/student-life/this-is-catholicyou/index.html

- Explore D.C. during the Metro Madness scavenger hunt with your newest classmates.

- Learn about our more than 100 student organizations during Fall Fiesta.

- Spend a beautiful weekend on the Chesapeake Bay during Freshman Retreat.

- Get to know the trendy Brookland shops, restaurants, and artist spaces.

- Develop lifelong friendships with your roommates.[33]

89.    On Defendant's Undergraduate Admission page, potential students are greeted with a short promotional video with links to stories that will help visitors understand what it's like to "learn here, live here, pray here, make friends here, and more."[34]

90.    One student in the video states that he came to Catholic for "its amazing campus, its incredible nursing program, and how close [it is] to the heart of D.C." Another student claims she came to Catholic because she was "really enamored by the idea of a small liberal arts school in D.C." She also stated that she "liked the idea of having a really small community but [has] access to the amenities of a big city."[35]

91.    Defendant markets the "student experience" throughout its website where visitors are told that their college life will be full of distinct opportunities that come from living and learning both on campus and in Washington, D.C.[36]

92.    Visitors can also search Defendant's website to read more about the "student experience" throughout Defendant's various campuses, colleges and programs.

---

[33] Id.
[34] https://www.catholic.edu/admission/undergraduate/spotlights.html
[35] https://vimeo.com/318864183
[36] https://www.catholic.edu/student-life/index.html

93.     Further, Defendant also has "A Day in the Life of Catholic University" page where a team of photographers and videographers fanned out across campus and Washington, D.C., to chronicle a day in the life of Catholic University. This can be found at https://dayinthelife.catholic.edu//index.html.

94.     The above-mentioned webpage shows various clips and pictures of the University Rowing team getting ready for practice four miles from campus, the sunrise on campus, an early morning at the Pryz,[37] a student checking her on-campus mailbox, lunch time at the Pryz, students studying at the library on campus, classes being held outside on campus, fitness classes taught by students on campus, the campus sunset, students getting to know each other on campus in the residence halls, students worshipping and receiving fellowship on campus, and students singing on campus, among other depictions.[38]

95.     The above-mentioned webpage also shows pictures of students on campus with the words, "The Largest campus In D.C."[39] This can attest to the fact that Defendant uses its location in D.C. to entice students to apply and enroll at Catholic University.

96.     Upon information and belief, there were no references or disclaimers in any of Defendant's websites, circulars, bulletins, publications, brochures, or other advertisements prior to January 14, 2020, that even referenced the possibility of in-person classes being changed to fully online classes at Defendant's discretion or for any other reason whatsoever after the start of a given term.[40]

---

[37] https://pryzbyla.catholic.edu. The Pryz is the center of campus activity—the place to meet, eat, study, hang out, and attend exciting social and academic events and programs.

[38] https://dayinthelife.catholic.edu//index.html

[39] Id.

[40] January 14, 2020 is the approximate date that students were permitted to withdraw from the University for the Spring 2020 term and receive a full tuition refund.

97.     In fact, it is clear that, prior to the COVID-19 interruption, Defendant had no plans whatsoever to offer its in-person classes via an online delivery model. This is evident from the fact that the University had to cancel classes for two days while its professors hurriedly and ineffectively scrambled to make the switch.

98.     Those prospective students who were interested in enrolling at the University after consuming the marketing materials described above were invited to complete applications, and some were selected for and offered admission.

99.     When a student is offered admission to the University, that student receives a number of further communications and has a number of additional interactions with Defendant.

100.    Initially, the student will receive an official offer letter. For example, students selected for the Catholic University Class of 2020 received a letter from Christopher P. Lydon, Vice President of Enrollment Management and Marketing.

101.    In this letter, Mr. Lydon stated "A Catholic University education will allow you to take advantage of the numerous opportunities to broaden your perspectives in the classroom, within our campus community, and throughout the City of Washington, D.C.

102.    The letter goes on to state, "I extend a warm welcome to you, confident that you will significantly enrich our University community and that your experience at Catholic University will prepare for a lifetime of personal and professional achievement."

103.    Accepted students are directed to review an enclosed brochure that highlights the important enrollment procedures, as well as information about residence life and preliminary registration/orientation information.

104.    Accepted students are also invited to attend Defendant's annual Odyssey Day (which is hosted on Defendant's campus) where Defendant welcome new students and highlight the University's location and the many benefits of being on campus.

105.    When students officially accept their offers, they are flooded with a number of other communications from the school.

106.    Before the start of their first semester, students must register to attend orientation on-campus.

107.    Students must then activate their Cardinal Mail accounts and accept the Student Financial Responsibilities before enrolling and registering for classes.[41]

108.    Defendant also encourages new students to learn about their "First-Year Experience" by stating the following on the Admitted Students section of their website:

> The First-Year Experience is the foundational liberal education core of the first-year curriculum at the Catholic University of America, bringing first-year students together in small Learning Communities for a shared, yearlong experience. Within Learning Communities, students take a sequence of four core classes in Philosophy, Theology, and English. The FYE also goes beyond the classroom with service learning activities, class-based excursions into Washington, D.C., and one-on-one academic advising.
>
> The FYE is inspired by the Catholic intellectual tradition and guided by the principles of liberal education. The first-year curriculum prepares students not only for the challenges of citizenship and morality, but also for all subsequent academic work in the major of their choice. In FYE classes, students learn to think more rigorously, write more persuasively, and read more perceptively, while confronting the great questions that have shaped human history and that continue to challenge us today. Tools and skills acquired in these classes become the foundation for work in the major and beyond.[42]

---

[41] https://www.catholic.edu/admission/undergraduate/admitted-students/admit-checklist-and-dates/index.html

[42] https://undergraduate-studies.catholic.edu/curriculum/first-year-experience/index.html

109.    Once students make it through orientation [and for returning students], it comes time to register for classes. This is another area where Defendant specifically emphasizes the distinction between its in-person and online class offerings through the academic catalogs and course listings on the website.

110.    On Defendant's FAQs for Online Courses page, Defendant states that, "Online courses are conducted over the Internet and typically do not have meetings in a designated physical space. Course materials are typically available online at a dedicated website - Blackboard. Class activities and instructor/student communications, are typically conducted by email or on the course website."[43]

111.    Each of Defendant's academic programs are listed separately on the University's financial services website with the specific tuition and fees charged for the specific program.

112.    That website is found at https://enrollment-services.catholic.edu/costs/index.html#Tuition.

113.    Each online program is specifically delineated as such, with the in-person programs not so delineated.

114.    When students log on to their registration portal to select their in-person classes, each class is listed not only by description, but by meeting time and physical classroom location.

115.    Likewise, given the synchronous nature of the in-person classes, students may not register for courses whose meeting times overlap.

116.    Upon registration, students in many of Defendant's on-campus schools and programs are subject to strict personal attendance requirements as set forth in various departmental policies and handbooks, evidencing Defendant's requirement and the student's acceptance of the requirement that such students physically attend such classes on campus.

---

[43] https://summer.catholic.edu/courses/faqonlinecourses.html

117.    Conversely, on Defendant's FAQ for Online Courses page, Defendant states that You may have to meet at a certain time for online discussions, but most of the work will be done on your own time according to your schedule - this gives you flexibility and the responsibility to stay on task.[44]

118.    Defendant's Course Catalog shows a separate section for Online Programs.[45]

119.    That Defendant offered to provide, and members of the Tuition Class expected to receive, instruction on the physical campus is further evidenced by the parties' prior course of conduct.

120.    Each day for the weeks and months leading up to the announcement of campus closures, students attended physical classrooms to receive in-person instruction, and Defendant provided such in-person instruction.

121.    Likewise, upon information and belief, most students were provided with syllabi and other documents that referenced class meeting schedules, locations, and physical attendance requirements.

122.    Each day for the weeks and months prior to announced closures, students had access to the full campus.

123.    Accordingly, it is clear that Defendant offered to provide live, in-person education, together with a full on-campus experience and that members of the Tuition Class accepted that offer by paying tuition and attending classes during the beginning of the Spring 2020 semester.

124.    This distinction is highlighted further by Defendant's own transfer credit policies.

---

[44] Id.
[45] https://www.catholic.edu/academics/course-catalog/index.html

125.     According to Defendant's policies, all transfer courses must be evaluated for equivalency before credit is given, and credit may be denied for courses that do not meet the appropriate criteria.[46]

126.     According to Defendant's policies, "Online courses are accepted with some exceptions. Please consult your schools to see if there are any restrictions. Online religion and philosophy courses are not accepted for any student. Online business courses are only accepted for incoming transfers and the college or university must be accredited by the Association to Advance Collegiate Schools of Business. For any other online course, you must submit a syllabus displaying that the course is online. Use the contact information on the Student Resources page to reach out to a particular School for more information about its online course policy."[47]

127.     Further, Defendant states, "The University recognizes that students learn in a variety of manners and contexts, including online. The University also acknowledges that some learning outcomes are best achieved by certain modes of delivery. Accordingly, some schools and departments restrict the transfer of online credit."[48]

128.     On the School of Philosophy website, Defendant is more explicit: "Philosophy courses taken online or at community colleges are not eligible for transfer towards philosophy requirements; they may, however, count as free electives."[49]

129.     Further, on Defendant's Restrictions and Limitations on Off-Campus Courses website, Defendant states that there are a number of limitations on the types and quantities of courses that

---

[46] https://undergraduate-studies.catholic.edu/academic-support/transfers/index.html
[47] https://undergraduate-studies.catholic.edu/academic-support/transfers/faqs.html
[48] Id.
[49] https://philosophy.catholic.edu/academics/undergraduate/transfer-credits/prospective-students/index.html

may be transferred. There is a list on the website of courses that are not eligible for transfer. Distance learning courses is one of them.[50]

130.    Lastly, Defendant's website states that Online courses must be approved by the student's School. Some Schools within Catholic University do not accent online courses for transfer. Coursework may be acceptable for Catholic University credit even if no equivalent course is offered at Catholic University. However, courses in subject areas not granted credit at Catholic University (for example, "student success," physical education, recreation, or emergency medical training) may not be transferred.[51]

131.    Based on mutual assent, Plaintiff and other members of the Tuition Class fulfilled their end of the bargain when they paid tuition for the Spring 2020 semester, either by paying out of pocket or by using student loan financing, or otherwise.

132.    However, the University breached the contract with Plaintiff and other members of the Tuition Class by moving all classes for the Spring 2020 semester to online distance learning platforms, and restricting the on-campus experience without reducing or refunding tuition accordingly.

133.    This cause of action does not seek to allege "academic malpractice."

134.    Rather, it is clear from the facts and circumstances that Defendant offered two separate and distinct products, one being live, in-person, on-campus education, with its featured ancillary and related services, and the other being online distance education.

135.    Plaintiff and members of the Tuition Class accepted Defendant's offer for live in-person on-campus education and paid valuable consideration in exchange.

---

[50] https://undergraduate-studies.catholic.edu/academic-support/transfers/offcampus/restrictions.html
[51] Id.

136.    However, after accepting such consideration from Plaintiff and other members of the Tuition Class, Defendant provided a materially different product, which deprived Plaintiff and other members of the Tuition Class of the benefit of the bargain for which they had already paid.

137.    Defendant retained tuition monies paid by Plaintiff and other members of the Tuition Class, without providing them the full benefit of their bargain.

138.    Plaintiff and other members of the Tuition Class have suffered damage as a direct and proximate result of Defendant's breach amounting to the difference in the fair market value of the services and access for which they contracted, and the services and access which they actually received.

139.    As a direct and proximate result of Defendant's breach, Plaintiff and other members of the Tuition Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include disgorgement of the difference between the fair market value of the online learning provided versus the fair market value of the live, in-person instruction in a physical classroom on a physical campus with all the attendant benefits for which they contracted.

**COUNT II**
**UNJUST ENRICHMENT**
**(Plaintiff and Other Members of the Tuition Class)**

140.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

141.    Plaintiff brings this count on behalf of herself and other members of the Tuition Class.

142.    This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the First Cause of Action above.

143.    Plaintiff and other members of the Tuition Class paid substantial tuition for live, in-person instruction in physical classrooms on a physical campus with all the attendant benefits.

144.    Plaintiff and other members of the Tuition Class conferred a benefit on Defendant when they paid this tuition.

145.    Defendant has realized this benefit by accepting such payment.

146.    However, Plaintiff and other members of the Tuition Class did not receive the full benefit of their bargain.

147.    Instead, Plaintiff and other members of the Tuition Class conferred this benefit on Defendant in expectation of receiving one product, *i.e.*, live in-person instruction in a physical classroom along with the on-campus experience of campus life as described more fully above, but they were provided with a materially different product carrying a different fair market value, *i.e.*, online instruction devoid of the on-campus experience, access, and services.

148.    Defendant has retained this benefit, even though Defendant has failed to provide the services for which the tuition was collected, making Defendant's retention unjust under the circumstances.

149.    It is significantly cheaper for Defendant to provide the online product than the on-campus product.

150.    As a result of closing campus and moving classes online, Defendant saved significant sums of money in the way of reduced utility costs, reduced maintenance and staffing requirements, reduced or eliminated hours for hourly employees, reduced or eliminated hours for paid work study students, and otherwise.

151.    Simply put, it is significantly cheaper to operate a remote, on-line campus than a fully open physical campus. But even if it was not, it is not the product that students were offered and not the product the students expected to receive.

152.    Equity and good conscience require that the University return a portion of the monies paid in tuition to Plaintiff and other members of the Tuition Class.

153.    This cause of action does not seek to allege "academic malpractice."

154.    Defendant should be required to disgorge this unjust enrichment to the extent that Defendant has retained more than the fair market value for the product that Defendant was able to provide.

## COUNT III
## BREACH OF CONTRACT
### (Plaintiff and Other Members of the Fees Class)

155.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

156.    Plaintiff brings this count on behalf of herself and other members of the Fees Class.

157.    In addition to tuition, Defendant charges a number of mandatory fees.

158.    Some fees are set forth not only in amount but also in description and purpose through the various academic catalogs and on the website.

159.    As such, it is axiomatic that the monies Plaintiff and other members of the Fees Class paid towards these fees were intended by both the students and Defendant to cover the services, access, benefits and programs for which the fees were described and billed.

160.    Defendant's mandatory Activities Fee is set by the University's Student Government

Association, and rates vary depending on whether students are full-time, part-time, or in a

graduate program.[52]

161.    The following information is found on the University's Student Government Association

website:

> The Student Government Association works tirelessly to serve the Catholic
> University community in creating a student-centered experience. From hosting
> inclusive events, to debating key campus issues in our Senate chamber, to
> advocating for students in meetings with the University's senior leadership,
> everything we do is for you, the students.
>
> Each time you set foot on Catholic's campus, you see SGA at work. Our
> Executive Branch focuses on offering support and resources to students, and
> making your voices heard in discussions about campus policy. Our Legislative
> Branch focuses on solving problems through debate and legislation. Our Treasury
> Board focuses on funding our student organizations so they can fulfill their
> mission and host fruitful events.
>
> Our goal is the enhancement of the student experience, and it is our hope that you
> join us in this unique mission. This website thoroughly explains all that we do.
> Take a look around, make your voice heard, and get involved.[53]

162.    While the Student Government Association set the mandatory Activities Fee to help

create and maintain a "student-centered experience," due to the closure of Defendant's campus

and the move to online distance learning platforms for the Spring 2020 semester, Plaintiff and

other members of the Fees class were deprived of the value of the services that the Activities Fee

was intended to cover.

163.    Defendant also charges a Technology Fee per semester, that varies depending on whether

students are full-time, part-time, or in a graduate program.

---

[52] https://enrollment-services.catholic.edu/costs/tuition-fees/index.html#Mandatory
[53] https://sga.catholic.edu

164.    In accepting the terms and paying these fees, a contract was formed between Plaintiff, including the Fees lass, and Defendant, which provided that Plaintiff and other members of the Fees Class would pay these fees on or behalf of themselves and, in exchange, Defendant would provide or make available the service, access, benefits and/or programs related to those fees, as promised.

165.    It is undisputed that Defendant did not provide student activities, on-campus printing facilities, access to recreational facilities, access to campus-based information technology resources, access to any of Columbia Health's five departments or access to the Lerner Student Center for a portion of the Spring 2020 semester.

166.    Plaintiff and other members of the Fees Class fulfilled their end of the bargain when they paid these fees for the Spring 2020 semester, either by paying out of pocket or by using student loan financing, or otherwise.

167.    However, Defendant breached the contract with Plaintiff and other members of the Fees Class by moving all classes for the Spring 2020 semester to online distance learning platforms, constructively evicting students from campus, closing most campus buildings and facilities, and cancelling most student activities.

168.    By retaining fees paid by Plaintiff and other members of the Fees Class, without providing them the full benefit of their bargain, Defendant has failed to perform its contractual obligations.

169.    Plaintiff and other members of the Fees Class have suffered damage as a direct and proximate result of Defendant's breach, namely being deprived of the value of the services, access, benefits and/or programs the fees were intended to cover.

170.     As a direct and proximate result of Defendant's breach, Plaintiff and other members of the Fees Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include disgorgement of the pro-rata amount of fees that were collected but for which services were not provided.

**COUNT IV**
**UNJUST ENRICHMENT**
**(Plaintiff and Other Members of the Fees Class)**

171.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

172.     Plaintiff brings this count on behalf of herself and other members of the Fees Class.

173.     This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the Third Cause of Action above.

174.     Defendant has received a benefit at the expense of Plaintiff and other members of the Fees Class to which it is not entitled.

175.     Plaintiff and other members of the Fees Class paid substantial student fees for on-campus services, access, benefits and/or programs and did not receive the full benefit of the bargain.

176.     Plaintiff and other members of the Fees Class conferred this benefit on Defendant when they paid the fees.

177.     Defendant realized this benefit by accepting such payment.

178.     Defendant has retained this benefit, even though Defendant has failed to provide the services, access, benefits and/or programs for which the fees were collected, making Defendant's retention unjust under the circumstances.

179.    Equity and good conscience require that Defendant return a portion of the monies paid in fees to Plaintiff and other members of the Fees Class.

180.    Defendant should be required to disgorge this unjust enrichment to the extent that Defendant has retained more than the fair market value for the product that Defendant was able to provide.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of members of the Classes, pray for judgment in their favor and against Defendant as follows:

A.      Certifying the Classes as proposed herein, designating Plaintiff as Class representative;

B.      Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this action;

C.      Declaring that Defendant has wrongfully kept monies paid for tuition and fees;

D.      Requiring that Defendant disgorge amounts wrongfully obtained for tuition and fees;

E.      Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from retaining the pro-rated, unused monies paid for tuition and fees;

F.      Scheduling a trial by jury in this action;

G.      Awarding Plaintiff's reasonable attorney's fees, costs and expenses, as permitted by law;

H.      Awarding pre and post-judgment interest on any amounts awarded, as permitted by law; and

I.      Awarding such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

This 31st day of August, 2020.

**DOUGLAS & BOYKIN, PLLC**

_____/s/_____
Curtis A. Boykin, Bar No. 444120
1850 M Street, NW, Suite 640
Washington, District of Columbia 20036
(202) 776-0370
caboykin@douglasboykin.com

-and-

**ANASTOPOULO LAW FIRM, LLC**

Eric M. Poulin (*admitted pro hac vice*)
Roy T. Willey, IV (*admitted pro hac vice*)
32 Ann Street
Charleston, SC 29403
(843) 614-8888
eric@akimlawfirm.com
roy@akimlawfirm.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I, Curtis A. Boykin, hereby certify that on August 31, 2020, a true and correct copy of the foregoing First Amended Complaint was served via the Court's electronic filing system to all counsel of record.

_____/s/_____
Curtis A. Boykin