# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 1:20-CV-21813-JEM

MARLENA ROSADO, on behalf of herself
and all others similarly situated,

    Plaintiff,

vs.

BARRY UNIVERSITY INC.,

    Defendant.

_____/

### ORDER DENYING MOTION TO DISMISS

**THIS CAUSE** is before the Court upon the Motion to Dismiss filed by Defendant, Barry University Inc. ("Barry") (DE 21). The Court has carefully considered the motion, response, and reply thereto, and is otherwise fully advised. For the reasons that follow, the Motion to Dismiss is **DENIED**.

**I.    FACTUAL BACKGROUND**

This action for breach of contract and unjust enrichment highlights one of the many ways the COVID-19 pandemic has caused collateral damage on private economic interests in a variety of contexts. Plaintiff, Marlena Rosado is an undergraduate student at Barry University. Following a spike in virus transmission earlier this year, many educational institutions, including Barry, transitioned from in-person to online education in an effort to curb the spread of the disease and protect the health and safety of the community.

Rosado alleges that she and Barry entered into a contract for in-person education, and related services, which Barry breached when it closed campus on March 19, 2020 and required campus residents to move out. (DE 15, Am. Compl. ¶¶ 12-14, 30-35, 79). Rosado states that apart

from a small credit, Barry has not reimbursed her or similarly situated students in any way for tuition, fees, on-campus housing, or meal plans as a result of the transition to remote instruction. (*Id*. ¶¶ 35-36). Rosado alleges that Barry and many independent studies have indicated that the on-campus experience is superior in facilitating academic achievement and job placement after graduation. (*Id*. ¶¶ 22-27). Rosado claims that she paid higher tuition and fees when she enrolled in Barry's on-campus program, rather than Barry's online courses, which cost substantially less. (*Id*. ¶¶ 1, 35, 41-48). In total, Rosado asserts that she paid $20,026 to Barry for tuition, housing, a meal plan, and fees for the Spring 2020 semester from January 8 through May 8. Rosado seeks a partial reimbursement for the "diminution of value of the education" as well as insurance, health and technology fees, and housing and meal plan payments following campus closure on March 19, 2020. (*Id*. ¶¶ 4, 11, 28-29).

Rosado alleges, and Barry does not dispute, that contractual promises can be found in a variety of documents including the student handbook, course syllabi, marketing materials and other circulars, bulletins, and publications, in print and on Barry's websites. (*Id*. ¶ 80; *see also* DE 35 and DE 45-1). For instance, Rosado contends that the student handbook provides that students have the right to the presence of an instructor according to the class schedule provided at the beginning of the course. (Am. Compl. ¶ 81). Similarly, Rosado alleges that the university catalog promises access to classrooms, intramural sports leagues, and on-campus events. (*Id*. ¶ 86). The terms and conditions of registration contains a list of class times and days, which Rosado was required to acknowledge. (*Id*. ¶ 88). Also, Rosado claims that class syllabi referenced class locations, times, and physical attendance requirements. (DE 15: ¶¶ 92). Rosado contends that these documents collectively constitute promises of access to in-person instruction, amenities, and activities. (*Id*. ¶ 94).

To complete the mosaic of documents purportedly governing the relationship between the parties, Barry supplements the record with snippets and links from its website and a copy of its housing agreement. Barry cites the following:

- **Refund Policy**: After the fifth week [into the semester] there is no refund . . . . All fees, outside of tuition and room and board, are non-refundable. (DE 35: 3)[1].

- **Fee Structure**: Arrangements for payment of all tuition, fees, room and board, and all associated expenses must be made prior to completion of registration. (DE 35: 4)[2].

- **Registration Agreement**: Registration constitutes a financial agreement between you and the University. Tuition, fees and other charges you incur, including but not limited to housing, meal plans and bookstore charges ("Charges") shall be added to your student account . . . . Students assume responsibility for all costs incurred as a result of enrollment at Barry University. (DE 35: 4)[3].

- **Tuition Policy**: (Same as Registration Agreement).

- **Response and Recovery Operations (Temporary Closure)**: One of the protective actions that may be issued by the Public Safety Department or University Crisis Management Team personnel is "temporary closure." A temporary closure protective action may be issued after an evacuation has been ordered, and it is determined that a building or the campus is unsafe until further notice. This protective action is aimed to keep students, faculty, staff and visitors safe by keeping them out of the hazard area, and away from emergency response operations. Additionally, temporary closure means all campus classes and functions are canceled until further notice. Only essential personnel should remain on campus . . . . (DE 35: 5)[4].

- **Meal Plans**: Student meal plans run on a weekly basis starting on Friday morning and ending Thursday evening. Unused Board Meals do not roll over to the following week. (DE 35: 5)[5].

---

[1] https://www.barry.edu/student-handbook/handbook/refund-policy.html (last accessed October 28, 2020).

[2] https://www.barry.edu/future-students/undergraduate/admissions/tuition-and-fees.html (last accessed October 28, 2020).

[3] https://barryustorage.blob.core.windows.net/assets/docs/registrar/registration-agreement-form.pdf (last accessed October 28, 2020).

[4] https://www.barry.edu/prepare/plan-at-work/response-recovery.html (last accessed October 28, 2020).

[5] https://www.barry.edu/dining-services/residential-meal-plan-options.html (last accessed October 28, 2020).

- **Housing Agreement**: If the Student chooses to voluntarily cancel his/her room assignment, a Student who has officially checked in is still responsible for a percentage of the room and board rates as published in the University's withdrawal policies. (DE 45: 2, and Ex. 1 ¶ 12).

Barry moves to dismiss the Amended Complaint as legally insufficient. This matter is now ripe for adjudication.

## II.    LEGAL STANDARD

A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984). At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

In considering a 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002). However, the court may also consider those "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). In reviewing the complaint, this Court must do so in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true.

*Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007).

## III. ANALYSIS

### A. Breach of Contract (Count I)

In this diversity action, Florida law applies. *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1132 (11th Cir. 2010). Under Florida law, to establish a breach of contract claim a Plaintiff must prove that "(1) a valid contract existed; (2) a material breach of the contract; and (3) damages." *Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 953 (Fla. 3d DCA 2017).

Barry's principal argument is that no contractual provision existed regarding in-person education. Barry alternatively contends that, even the agreement existed, there was no material breach or damages, and that COVID-19 would have "frustrated its purpose" in any event. Barry further claims that Rosado "ratified" Barry's alleged breach by continuing to take online classes. Each arguments will be addressed in turn.

#### 1. Whether Rosado Has Sufficiently Alleged the Existence of a Valid Contract, Material Breach, and Damages

Rosado alleges that based on documents including the student handbook, university catalog, program publications, and course syllabi, and registration papers, which invoiced Rosado higher tuition corresponding to in-person classes rather than the lower tuition associated with Barry's online learning program—a contract promising in-person instruction was created. The Court agrees with Rosado that there is sufficient factual content alleged in the Amended Complaint to establish the existence of a valid contract with respect to in-person education. Several considerations compel this conclusion.

Courts in this district have acknowledged that the terms of the relationship between a student and a university may be found in university catalogs, student manuals, student handbooks,

and other university policies and procedures. *Villard v. Capella Univ.*, 2017 U.S. Dist. LEXIS 220541, at *4 (M.D. Fla. Dec. 21, 2017) (applying Florida law); *Sirpal v. Univ. of Miami*, 684 F. Supp. 2d 1349, 1359 (S.D. Fla. 2010) (applying Florida law). More recently, in the COVID-19 context, a district court applying Florida law denied a college's motion to dismiss on a nearly identical breach-of-contract claim because it found there were sufficient facts to allege a contract for in-person instruction. *Salerno v. Florida Southern College*, 2020 WL 5583522, at *4 (M.D. Fla. Sept. 16, 2020). Indeed, the plaintiff in *Salerno*, just as in this case, alleged that the college made references to on-campus locations, times, and amenities in its publications and had "touted its many resources and facilities." *Id.* at *5.

The Court is persuaded by *Salerno* and accordingly concludes that Rosado's allegations that Barry accepted $773 more per credit for in-person classes from Rosado, and actually provided in-person education to Rosado until March 19, 2020, in the backdrop of numerous other documents referring to in-person classes and amenities, are sufficient to establish, at minimum, an implied contract. *See also Jallali v. Nova Southeastern University, Inc.*, 992 So.2d 338, 342 (Fla. 4th DCA 2008) (recognizing a student's relationship with his university as an implied contract arising out of a university's rules, regulations, regimen and publications at the time of enrollment).

Barry vehemently disputes its obligation to provide in-person instruction and emphasizes that there is nothing in its various publications that contractually prohibited Barry from switching to an electronic mode of instruction as dictated by the circumstances. Indeed, Barry paints itself as a co-equal victim of the pandemic and goes on at length about how its administrative response was totally reasonable. But this misses the point. The question is not whether Barry was justified in closing its campus due to an unforeseen pandemic. Rather, the question is where that risk (i.e., the financial burden) should be contractually allocated. That is what this lawsuit is about.

The Court pauses to note that the existence of a contract in this case may well be a double-edged sword. If the contractual provisions referenced by Barry govern this dispute, as discovery may reveal, the refund policy may have allocated the risk of emergency closures to students. On the other hand, some Florida cases (albeit in a different context) seem to support the rule that the designation of a payment as "nonrefundable" in a contract is not necessarily controlling in cases where performance is excused by circumstances beyond the control of the contracting parties. *See, e.g., Waksman Enterprises, Inc. v. Oregon Properties, Inc.*, 862 So. 2d 35, 43 (Fla. 2d DCA 2003); *Arthur Rutenberg Corp. v. Pasin*, 506 So. 2d 33, 34 (Fla. 4th DCA 1987). At this juncture, the Court offers no opinion on this possibility. These matters have not been adequately briefed by the parties and further factual development is required before such a determination can be made.

The Court further rejects Barry's materiality and damages arguments. Both arguments are predicated on the notion that, if a breach existed with respect to the transition to online teaching, it was *de minimis*, since Rosado would still earn credits toward a diploma. This is kind of like purchasing a Cadillac at full price and receiving an Oldsmobile. Although both are fine vehicles, surely it is no consolation to the Cadillac buyer that the "Olds" can also go from Point A to Point B. That is Barry's argument and the Court declines to consider it further.

### 2. Whether Impossibility of Performance or Frustration of Purpose Bar Rosado's Claims

A complaint may also be subject to dismissal "when its allegations—on their face—show that an affirmative defense bars recovery on the claim." *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001). In this connection, Barry argues that it was impossible for it to conduct in-person classes and activities due to the pandemic, which frustrated Rosado's purpose. "Should Barry have just *ignored* COVID-19 and continued to offer in-person instruction, risking the health of students, faculty, and staff?" the university ponders. (DE 21: 21). This defense is a

variation of its contractual validity argument. Barry implies that since it had little choice but to close the campus, its nonperformance is excused.

The Court perceives two problems with this argument. First, the defenses are not apparent on the face of the pleading. Barry states that "[t]he Court can take judicial notice of the existence of the frustration of purposes and impossibility affirmative defenses." (DE 21: 19). But a Court can only take notice of adjudicative facts, Fed. R. Evid. 201(a), not legal conclusions determining ultimate issues in a case. *See generally Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*, 369 F.3d 1197, 1204–05 (11th Cir. 2004) (stating that "taking of judicial notice of facts is . . . a highly limited process" (quoting *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997))). Although the existence of COVID-19 is generally known and cannot reasonably be questioned, that does not conclusively establish the defense of impossibility or frustration of purpose on the facts alleged, particularly given the overlapping and sometimes contradictory state and local regulations, and evolving standards, for dealing with the virus. Furthermore, Barry has not pointed the Court to any authorities supporting the application of the doctrines in this context.

Second, even assuming for present purposes that impossibility/frustration is established by the pleading, this still leaves open the question set forth previously: Who bears the risk for the pandemic based upon the contractual expectations of the parties? If the answer is Barry, then these defenses make no difference to the viability of Rosado's claims for pro-rata reimbursement. Indeed, in the absence of specific contractual provisions, courts often attempt to return the parties to their precontractual positions, insofar as possible, when nonperformance is excused. *See, e.g., E.B. Sherman, Inc. v. Mirizio,* 556 So. 2d 1143, 1144 (Fla. 3d DCA 1989); *Juno by the Sea Condo. Apartments, Inc. v. Juno by the Sea N. Condo. Ass'n (The Tower), Inc*., 418 So. 2d 1190 (Fla. 4th DCA 1982). It would certainly be anomalous, without sufficiently strong evidence of contractual

intent, to permit a party to reap the full benefits of an agreement in return for only partial performance. So, the applicability of these doctrines is only part of the picture. The Court accordingly concludes that, in the unique circumstances here, where significant questions remain about which contractual provisions were agreed to, and when they came into effect, further discovery is necessary.

### 3. Whether Rosado Ratified the Contract After the Alleged Breach

Barry next argues that "[Rosado's] conduct is the *very essence* of ratification and is a *textbook example* of the defense" because, if Rosado "truly believed" she had a claim against Barry, "she was required to advise Barry of such breach, refuse to attend classes that breached the agreement, and demand that Barry refund her money and erase any negative grade . . . ." (DE 21: 23). The Court disagrees. The pleading alleges that Rosado was forced to leave campus and that a withdrawal request at the time of the campus closure would have triggered the forfeiture of her tuition and a significant academic penalty. Rosado's decision to avoid that outcome, dictated by an unpredictable viral outbreak, without more, is insufficient at this juncture to establish an "affirmative showing" of her "intention to adopt" Barry's alleged breach of contract. *See Zurstrassen v. Stonier*, 786 So. 2d 65, 71 (Fla. 4th DCA 2001)(stating that "[r]atification occurs where a party with full knowledge of all the material facts makes an affirmative showing of his or her express or implied intention to adopt an act or contract entered into without authority"). Barry has not provided sufficient support for its position that Rosado was required to threaten Barry, risk financial loss, and disrupt her academic career in order to preserve her contractual remedies.

### B. Unjust Enrichment (Count II)

Dismissal is further inappropriate in regard to Rosado's unjust enrichment claim. To establish unjust enrichment under Florida law, a plaintiff must prove that "(1) plaintiff has

conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff." *Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So. 3d 689, 693 (Fla. 3d DCA 2018).

Although it is well established that an unjust enrichment claim cannot be maintained when there is an express contract with a legal remedy, *see, e.g., Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1322 (S.D. Fla. 2014), it is equally clear that a plaintiff may assert a claim for unjust enrichment as an alternative to a contract claim. *Silver Crown Investments, LLC v. Team Real Estate Mgmt., LLC*, 349 F. Supp. 3d 1316 (S.D. Fla. 2018).

Rosado alleges that Barry has been unjustly enriched by retaining the full tuition and fees paid by her and similarly situated students for the full Spring 2020 semester. Rosado alleges that she lost the benefits of those services and amenities when Barry suspended in-person classes and forced Rosado to move out. She states further that Barry retained the tuition and fees paid by Rosado even though it did not provide the services for which payments were made.

The Court concludes that Rosado has pled sufficient facts to withstand dismissal of her unjust enrichment claim. Although Barry disputes that the retention of the payments was "unjust," a motion to dismiss tests the sufficiency of the pleading, not the merits of the case. The Court further concludes that Rosado has properly pled unjust enrichment as an alternative to her claim for breach of contract. *See Salerno*, 2020 WL 5583522, at *5.

## VI. CONCLUSION

For the foregoing reasons, the Motion to Dismiss filed by Defendant, Barry University Inc. (DE 21) is **DENIED**. Defendant's Motion to Stay (DE 22) and Plaintiff's Motion to Strike (DE 49) are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers, Miami, Florida, this 30th day of October 2020.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE