## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| |
|---|
| HALEY GUSTAVSON, individually and on behalf of all others similarly situated, |

Civil Action No. 20-cv-01496

*Plaintiffs*,

    v.

THE CATHOLIC UNIVERSITY OF AMERICA,

                                 *Defendant*.

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
## ATTORNEYS' FEES, COSTS, EXPENSES, AND CLASS REPRESENTATIVE AWARD

Dated: December 9, 2024

*/s/ Paul Doolittle*
**POULIN | WILLEY |**
**ANASTOPOULO, LLC**
Eric M. Poulin (admitted *pro hac vice*)
Roy T. Willey, IV (admitted *pro hac vice*)
Paul Doolittle (admitted *pro hac vice*)
32 Ann Street
Charleston, SC 29403
(843) 614-8888
eric@akimlawfirm.com
roy@akimlawfirm.com
pauld@akimlawfirm.com


**DOUGLAS & BOYKIN, PLLC**
Curtis A. Boykin (Bar No. 444120)
1850 M Street, NW, Suite 640
Washington, DC 20036-5836
Telephone: (202) 776-0370
Facsimile: (202) 776-0975
Email: caboykin@douglasboykin.com
*Attorneys for Plaintiff and Putative Class*

**TABLE OF CONTENTS**

**PAGE(S)**

INTRODUCTION ...................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND....................................................................2

I. PLAINTIFF'S ALLEGATIONS ........................................................................................ 2

II. THE LITIGATION AND WORK PERFORMED TO BENEFIT THE
CLASS ................................................................................................................................ 3

SUMMARY OF THE SETTLEMENT ...................................................................................5

ARGUMENT ......................................................................................................................5

    I.      THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND
            SHOULD BE APPROVED…………………………………………………………..5

        A.  The Percentage-Of-Recovery Method Should Be Used To
            Calculate Fees .........................................................................................5

        B.  One-Third Of The Common Fund Is A Reasonable Fee ....................................6

           1.  The size of the fund created and the number of persons
               benefitted……………………………………………………………..7

           2.  The presence or absence of substantial objections by
               members of the class to the settlement terms and/or fees
               requested by counsel .......................................................................7

           3.  The skill and efficiency of the attorneys involved...........................................7

           4.  The complexity and duration of the litigation………………..……………..8

           5.  The risk of nonpayment……………………..…………………………..…..9

           6.  The amount of time devoted to the case by Plaintiff's counsel ......................10

           7.  The awards in similar cases ..........................................................................11

           8.  The value of benefits attributable to the efforts of class
               counsel relative to the efforts of other groups, such as
               government agencies conducting investigations ...........................11

           9.  The percentage fee that would have been negotiated had the
               case been subject to a private contingent fee arrangement at
               the time counsel was retained ...........................................................11

           10. Any innovative terms of settlement ...............................................................12

        C.  The Requested Attorneys' Fees Are Also Reasonable Under A
            Lodestar Cross-Check ........................................................................ 12

II.     THE REQUESTED REIMBURSEMENT OF COSTS AND EXPENSES
        ARE REASONABLE AND SHOULD BE APPROVED…………………………..13

III.    THE REQUESTED INCENTIVE AWARD REFLECTS PLAINTIFF'S
        ACTIVE INVOLVEMENT IN THIS ACTION AND SHOULD BE
        APPROVED……………………………………………………………………14

CONCLUSION ...........................................................................................................................15

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Bredbenner v. Liberty Travel, Inc.*,
  2011 WL 1344745 (D.N.J. Apr. 8, 2011) ...............................................................................7

*Brumley v. Camin Cargo Control, Inc.*,
  2012 WL 1019337 (D.N.J. Mar. 26, 2012) ............................................................. 6

*Bryan v. Pittsburgh Plate Glass Co.*,
  494 F.2d 799 (3d Cir. 1974) ................................................................................. 8

*Cohen v. Chilcott*
  522 F.Supp. 2d 105 (D.D.C. 2007)...............................…..…......….…...........................15

*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2000) ................................................................................. 6

*Huffman v. Prudential Ins. Co. of Am.*,
  2019 WL 1499475 (E.D. Pa. Dec. 20, 2017) ..................................................... 12

*In re Ampicillin Antitrust Litigation*
  526 F.Supp. 494, 498 (D.D.C. 1981)…..……….......…………..….…......…………………11

*In re AremisSoft Corp.*,
  210 F.R.D. 109 (D.N.J. 2002) ............................................................................. 5

*In re Cendant Corp., Derivative Action Litigation*,
  232 F. Supp. 2d 327 (D.N.J. 2002) …………………………..……………...…...………13

*In re Computron Software, Inc.*,
  6 F. Supp. 2d 313 (D.N.J. 1998) ......................................................................... 7

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*
  55 F.3d 768 (3d Cir. 1995) .............................................................................. 5, 8

*In re Lorazepam & Clorazepate Antitrust Litigation*
  2003 WL 22037741 (D.C. Cir. 2003)………………………………….……………5, 6, 13, 14

*In re Lucent Techs., Inc., Sec. Litig.*,
  327 F. Supp. 2d 426 (D.N.J. 2004) ..................................................................... 9

*In re Medical X-Ray Film Antitrust Litigation*
  1998 WL 661515 at 7 (E.D.N.Y. 1998)……………………………………………………13

*In re Newbridge Networks Sec. Litigation*
  1998 WL 765724 (D.D.C. 1998)………………………………………………………..9

*In re Ocean Power Techs., Inc.*,
  2016 WL 6778218 (D.N.J. 2016) ........................................................................ 8

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*
148 F.3d 283, 341 (3d Cir. 1998)…………………..…………………………………..……12, 13

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005) ...................................................................................... 6, 12

*Missouri v. Jenkins by Agyei*,
    491 U.S. 274 (1989) ........................................................................................................ 12

*Moon v. E.I. du Pont de Nemours & Co.*,
    2023 WL 1765565 (D. Del. Feb. 3, 2023) ...................................................................... 6

*O'Keefe v. Mercedes-Benz USA, LLC*,
    214 F.R.D. 266 (E.D. Pa. 2003) ...................................................................................... 9

*Rode v. Dellarciprete*,
    892 F.2d 1177 (3d Cir. 1990) ........................................................................................ 12

*Rossini v. PNC Fin. Servs. Grp., Inc.*,
    2020 WL 3481458 (W.D. Pa. June 26, 2020) ................................................................ 6

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261(D.C. Cir. 1993)……………………..…………………………………5

*Wells v. Allstate Ins. Co.*
    557 F.Supp.2d 1 (D.D.C. 2008)……………………………………………………15

**RULES**

FED. R. CIV. P. 12(B)(1) ................................................................................................................ 3

FED. R. CIV. P. 12(B)(6) ................................................................................................................ 3

FED. R. CIV. P. 23(F) ......................................................................................................... 5, 10, 12

FED. R. CIV. P. 23(H) .............................................................................................................. 2, 6

## <u>INTRODUCTION</u>

Plaintiff Haley Gustavson ("Plaintiff" or the "Class Representative") was an undergraduate student enrolled at Defendant The Catholic University of America ("Catholic" or "Defendant") for the Spring 2020 semester. Plaintiff alleged that Catholic breached its contract with students to provide an in-person, on-campus experience when it closed campus midway through the Spring 2020 Semester and moved to online learning due to COVID-19 and mandatory government shutdown orders. After extensive arms' length negotiations, the Plaintiff and Catholic reached a Class Action Settlement[1] (the "Agreement" or "Settlement") (ECF No. 97). The Settlement—preliminarily approved by this Court on September 19, 2024 (ECF No. 98)—creates a $2.0 million non-reversionary common fund that will be used to pay Settlement Class Members,[2] notice and administration costs, a Class Representative Award to the named Plaintiff, and attorneys' fees, costs, and expenses to Class Counsel.

This Settlement falls squarely within the range established by previous, similar settlements that have been finally approved in the COVID-19 tuition and fee refund context. *See, e.g.*, *Adavenaizz v. Howard University;* No. 1:20-cv-03792; ($2,073,680 common fund); *Smith v. The University of Pennsylvania*, No. 2:20-cv-02086-TJS ($4.5MM common fund); *Wright v. S. New Hampshire Univ.*, No. 1:20-cv-00609-LM (D.N.H.) ($1.25MM common fund); *Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM (S.D. Fla.) ($2.4MM common fund); *Martin v. Lindenwood Univ.*, No. 4:20-cv-00128-RLW (E.D. Mo.) ($1.65MM common fund); *D'Amario v. The University of Tampa*, No. 7:20-cv-03744-CS (S.D.N.Y.) (3.4MM common fund) ($3.4MM common fund); and *Metzner v. Quinnipiac University*, 3:20-cv-00784-KAD (D. Conn.)

---

[1] The Parties' Class Action Settlement Agreement is attached as Exhibit A to the Declaration of Paul Doolittle in Support of Plaintiff's Motion for Attorneys' Fees, Costs, Expenses and Class Representative Award ("Doolittle Decl."). *See* Doolittle Decl. ¶ 2.
[2] Unless otherwise noted, capitalized terms have the same meaning as set forth in the Agreement.

($2.5MM common fund). What is more, Settlement Class Members will automatically receive a *pro rata* cash payment unless they exclude themselves from the Settlement.

In light of this exceptional result, Plaintiff respectfully requests, pursuant to Federal Rule of Civil Procedure 23(h), that the Court approve attorneys' fees of one-third of the Settlement Fund, or $666,666.66, attorneys' costs and expenses of $144,808.38, as well as a Class Representative Award of $7,5000 to the Plaintiff for her service as class representative.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. PLAINTIFF'S ALLEGATIONS

Plaintiff and Settlement Class Members are current and/or former students, who paid tuition and fees for the Spring 2020 Semester at Catholic. Plaintiff alleges that Catholic failed to "issue appropriate refunds for the Spring 2020 term after cancelling in-person classes and changing all classes to an online/remote format … as a result, of the Novel Coronavirus Disease." Second Amended Class Action Complaint (ECF No. 78) ("CAC"), ¶ 1. Plaintiff also alleges that Catholic "deprived Plaintiff and other members of the Classes from recognizing the benefits of on-campus enrollment … in exchange for which they had already paid … tuition." *Id.* ¶ 2. The CAC further alleges that Catholic breached a contract with Plaintiff when failing to provide Plaintiffs with refunds for tuition. *See, e.g., id.* ¶¶ 132.  In addition, Plaintiff Gustavson alleges that Catholic breached its contractual obligations with students by failing to refund Plaintiff and other students for mandatory fees such as the Activities Fee and Technology Fee, the benefits of which were not enjoyed by the Plaintiff after the cancellation of in-person activities and classes. ¶¶ 168.

Catholic denies that it breached any contract, express or implied, with its students or that it was unjustly enriched as a result of the transition to remote learning during the Spring 2020 Semester in response to the COVID-19 pandemic and mandatory government shutdown orders.

## II. THE LITIGATION AND WORK PERFORMED TO BENEFIT THE CLASS

Plaintiff Daniella Montesano filed a putative class action complaint in this Court on June 8, 2020.  ECF No. 1. Catholic moved to dismiss the complaint on August 17, 2020.  ECF No. 16.  In response, Plaintiff Montesano filed an Amended Class Action Complaint on August 31, 2020.  ECF No. 17. On September 11, 2020, Catholic moved to dismiss the Amended Class Action Complaint.  ECF No. 20. Plaintiff Montesano filed her Response on October 16, 2020.  ECF No. 22.  On July 9, 2021, the Court entered its Memorandum Opinion and Order denying the Defendant's Motion to Dismiss.  ECF No. 39.

On July 23, 2021, Catholic filed its Motion for Certification of Interlocutory Appeal and Motion to Stay regarding the Court's denial of its Motion to Dismiss.  ECF No. 41.  Plaintiff Montesano filed her Response to this Motion on August 6, 2021.  On September 3, 2021, the Court granted Catholic's Motion for Certification of Interlocutory Appeal and Motion to Stay the Case Pending Appeal.  ECF No. 45.  The D.C. Circuit denied Catholic's Motion for An Interlocutory Appeal.  ECF No. 46.

Catholic filed a Partial Motion to Dismiss the Amended Class Action Complaint on May 24, 2022, and filed its Answer to Plaintiff's Amended Class Action Complaint on May 24, 2022.  ECF Nos. 51 and 52.  Plaintiff filed its Response to Partial Motion to Dismiss on June 14, 2022.  ECF No. 57.  In a June 22, 2022 text-only Order, the Court denied Catholic's Partial Motion to Dismiss.

On August 24, 2022, Catholic filed a Motion for Judgment on the Pleadings.  ECF No. 64.  Plaintiff filed her Response on September 28, 2022.  ECF No. 67.  The Court denied Catholic's Motion for Judgment on the Pleadings on October 26, 2022.  ECF No. 69.

On May 23, 2023, Plaintiff filed a Motion for Leave to File Amended Complaint and Motion to Substitute Plaintiff Montesano for Plaintiff Haley Gustavson.  ECF No. 74.  Catholic filed its Response in Opposition to this Motion on June 9, 2023.  ECF No. 77.  On August 10, 2023, in a text-only Order, the Court granted Plaintiff's Motion for Leave to File Amended Complaint and Motion to Substitute Plaintiff.  On August 10, 2023, Plaintiff Gustavson filed her Second Amended Class Action Complaint.  ECF No. 78.  Catholic filed its Answer to Second Amended Class Action Complaint on August 24, 2023.  ECF No. 80.

On November 15, 2023, the Parties filed a Joint Motion to Stay Proceedings asking the Court to stay the case until March 8, 2024 to allow them to discuss settlement.  ECF No. 81.  The Court entered a text-only order on November 29, 2023 referring the case to Magistrate Judge Michael Harvey for mediation.  The Court directed the parties to report to the Court on or before March 17, 2024, as to the status of the mediation.  On March 15, 2024, April 14, 2024, May 15, 2024, June 14, 2024, and July 15, 2024, the Parties filed a Joint Status Report in which they reported that the parties were actively negotiating settlement papers and requested that the Court continue to stay the case.  On August 14, 2024, the parties filed another Joint Status Report and again asked the Court to continue the stay, but only until August 28, 2024, explaining that they were in the process of securing signatures for the settlement agreement. ECF No. 93. The Court granted the motion and directed the parties to file another Joint Status Report on August 28, 2024.

In the weeks following, the parties negotiated and finalized the full-form Settlement Agreement. On August 29, 2024, the Plaintiff filed its Motion for Preliminary Approval of Class Action Settlement. ECF No. 95. On September 19, 2024, the Court entered its Order granting the Motion for Preliminary Approval. ECF No. 98.

## SUMMARY OF THE SETTLEMENT

Class Counsel's efforts resulted in an outstanding settlement. The Settlement provides an exceptional result for the Settlement Class by delivering immediate cash to class members. The Settlement creates a non-reversionary $2,000,000.00 Settlement Fund, from which class members will automatically receive a *pro rata* cash payment, unless they exclude themselves from the Settlement. Doolittle Decl., Ex. A, ¶ 2.1.

## ARGUMENT

I.     THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND SHOULD BE APPROVED

The requested fee award of $666,666.66, representing one-third of the cash common fund, is reasonable and merits approval. Under Federal Rule of Civil Procedure 23(h), courts may award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, the Settlement Agreement provides that Class Counsel may petition the Court for an award of attorneys' fees of up to one-third of the Settlement Fund ($666,666.66). Doolittle Decl. Ex A ¶ 10.2.

### A. The Percentage-Of-Recovery Method Should Be Used To Calculate Fees

The D.C. Circuit "has joined other circuits in concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases." *In re Lorazepam & Clorazepate Antitrust Litigation* 2003 WL 22037741, at *7 (D.C. Cir. 2003) (quoting *Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1265 (D.C. Cir. 1993)). *See also In re AremisSoft Corp.*, 210 F.R.D. 109, 128 (D.N.J. 2002) (citing *In re Gen. Motors Corp. Pick-Up Truck*

*Fuel Tank Products Liability Litigation;* 55 F.3d 768, 821 (3rd Cir. 1995); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005), *as amended* (Feb. 25, 2005) ("The percentage-of-recovery method is generally favored in common fund cases because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure.") (citation and internal quotation marks omitted). Using this methodology, attorney's fees of one-third of a common fund are "unremarkable." *Moon v. E.I. du Pont de Nemours & Co.*, 2023 WL 1765565, at *4 (D. Del. Feb. 3, 2023) (Bibas, J.); *Brumley v. Camin Cargo Control, Inc.*, 2012 WL 1019337, at *9 (D.N.J. Mar. 26, 2012) ("[T]he Court finds the attorneys' fees requested-one-third of the common fund amount-reasonable under the percentage-of-recovery method…"); *Rossini v. PNC Fin. Servs. Grp., Inc.*, 2020 WL 3481458, at *19 (W.D. Pa. June 26, 2020) ("a percentage award of 33.3% falls squarely within the range of awards found to be reasonable by the courts.").

**B. One-Third Of The Common Fund Is A Reasonable Fee**

While the D.C. Circuit has not yet developed a formal list of factors to be considered in evaluating fee requests under the percentage-of-recovery method, other jurisdictions have set forth factors that the D.C. Circuit has adopted. *See In re Lorazepam*, at *7 (adopting factors set forth in the 3rd Circuit and 10th Circuit). In *In re Lorazepam*, the D.C. Circuit specifically cited the factors set forth in the Third Circuit case of *Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190 (3d Cir. 2000). *In re Lorazepam*, at *8. These factors include (1) the size of the fund created and the number of persons benefited; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by Plaintiff's counsel and (7) the awards in similar cases. *Gunter*, 223 F.3d at 195. The instant case's satisfaction of these factors is discussed in detail as follows.

### 1.    The size of the fund created and the number of persons benefitted

If final approval is granted, the Settlement will result in a substantial common fund of

$2,000,000.00 for the benefit of approximately 5,070 Class Members who otherwise would

receive nothing. This provides a return of $394.47 per Class Member before reductions for

attorneys' fees and costs, administrative costs and a Class Representative Award. As described

below, the Settlement thus provides an excellent result for Class Members as compared to other

similar cases. This substantial recovery, which will be shared with all undergraduate and

graduate students alike who paid any tuition or fees during the Spring 2020 semester and did not

withdraw from Catholic by March 18, 2020, weighs in favor of approving the requested fee.

### 2.    The presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel

As of the filing of this motion, no Class Member has filed an objection to the Settlement

Agreement. "The absence of any objection weighs in favor of the fee request." *Bredbenner v.*

*Liberty Travel, Inc.,* 2011 WL 1344745, at *20 (D.N.J. Apr. 8, 2011).

### 3.    The skill and efficiency of the attorneys involved

"[T]he percentage awarded, should, and generally does, increase commensurate with

increased quality of representation. The quality of representation can be rewarded by considering

the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery,

the standing, experience and expertise of the counsel, the skill and professionalism with which

counsel prosecuted the case and the performance and quality of opposing counsel." *In re*

*Computron Software, Inc.*, 6 F. Supp. 2d 313, 323 (D.N.J. 1998).

Class action litigation presents unique challenges and—by achieving an exceptional

settlement—Class Counsel proved that they have the ability and resources to litigate this case

zealously and effectively. In addition, Class Counsel are well-respected attorneys with

7

significant experience litigating consumer class actions of similar size, scope, and complexity. Doolittle Decl. ¶ 35; *see also* Ex. E (Poulin Willey Anastopoulo Firm Resume). Furthermore, Class Counsel achieved an exceptional result in this case while facing well-resourced and highly experienced defense counsel. Class Counsel litigated this case efficiently, effectively, and civilly. The excellent result is a function of the high quality of that work, which supports the requested fee award.

### 4. The complexity and duration of the litigation

This factor captures the "probable costs, in both time and money, of continued litigation." *Bryan v. Pittsburgh Plate Glass Co. (PPG Indus.)*, 494 F.2d 799, 801 (3d Cir. 1974); *see also In re Gen. Motors Corp.*, 55 F.3d at 812; *In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *28 [need to add cite to court and date].

Here, the complex nature of this litigation further favors the requested fee award. The claims and legal theories at issue in this case are novel, complicated, and unsettled. Plaintiff litigated the case against Catholic for approximately four years leading up to the settlement negotiations. Catholic filed several Motions to Dismiss and a Motion for Judgment on the Pleadings. Catholic was granted a stay in the litigation pending an interlocutory appeal on an Order Denying its Motion to Dismiss, said appeal being denied by the D.C. Circuit . Plaintiff filed her Second Amended Complaint shortly before the case was stayed to permit the parties to discuss settlement, and Catholic was likely to file a Motion for Summary Judgment. Plaintiff had not yet filed her Motion for Class Certification, and such Motion would have been vociferously challenged by the Catholic. As such, continued litigation would be time consuming, expensive and risky. As the D.C. Circuit explained in another class action attorney's fee case, "[D]uring the four years of this litigation counsel have, without receiving compensation, engaged

in extensive motions practice and conducted considerable discovery." *In re Newbridge Networks Sec. Litigation*, 1998 WL 765724, at *3(D.D.C. 1998).

The same is true here. Class Counsel participated in several court hearings and briefed oppositions to Defendant's motions to dismiss and motion for judgment on the pleadings. As noted above, Class Counsel secured rare victories on the tuition-based claims at the motion to dismiss stage but continued to face substantial risk. Indeed, absent settlement, litigation likely would have continued for several years, with the parties litigating class certification, summary judgment and Daubert issues, and possibly heading to trial. In light of the foregoing, this factor weighs strongly in favor of the requested award of fees.

### 5.    The risk of nonpayment

This factor recognizes the risk of non-payment in cases prosecuted on a contingency basis where claims are not successful, which can justify higher fees. "Any contingency fee includes a risk of non-payment." *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 309 (E.D. Pa. 2003); *see also In re Lucent Techs., Inc., Sec. Litig.*, 327 F. Supp. 2d 426, 438 (D.N.J. 2004) ("[C]ourts have recognized that the risk of non-payment is heightened in a case of this nature where counsel accepts a case on a contingent basis."); *id.* ("the intrinsically speculative nature of this contingent fee case enhances the risk of non-payment and bolsters the Court's analysis under this factor").

This case presented a substantial risk of non-payment for Class Counsel. For approximately four years, Class Counsel invested significant time, effort, and resources to the litigation without any compensation. Doolittle Decl. ¶ 43. Cognizant of the risk of nonpayment, Class Counsel nonetheless took this case on a pure contingency basis and committed substantial resources of attorney and staff time towards investigating and litigating this action. Id. Class Counsel further recognizes that Plaintiff faced considerable risks in opposing an anticipated Rule

23(f) petition if Plaintiff were successful in obtaining class certification, a motion for summary judgment, a motion to strike expert testimony, and trial. Class Counsel also assumed the risk of the significant delay associated with achieving a final resolution through trial and any appeals. That Class Counsel undertook this representation, despite the significant risk of nonpayment, strongly supports the requested fee award.

### 6. The amount of time devoted to the case by Plaintiff's counsel

Since Plaintiff's counsel began investigating this matter in March 2020, 949 hours have been devoted to the successful pursuit of this matter. Doolittle Decl. ¶ 43. That time was spent investigating the underlying claims and factual allegations, drafting the complaints, briefing and/or arguing the motions to dismiss, working with an expert, and requesting discovery and reviewing responses. These significant efforts, and counsel's diligence, resulted in this excellent Settlement for the Class. Importantly, no time spent on Class Counsel's fee request is included in the hours spent preparing this motion. Class Counsel anticipate spending substantial time and resources overseeing the final stages of the Settlement – no fees are being requested for these services either. Given the duration, complexity of the legal issues, complexity of the factual issues, and the need for expert guidance, the time invested by Class Counsel was reasonable. This factor supports approving Class Counsel's fee request.

**7.      The awards in similar cases**

The requested fee award comports with awards in similar cases. Courts in the D.C.

Circuit have recognized a range of attorneys' fees, with the courts recognizing that several cases

have approved attorneys' fees over forty percent.  *In re Ampicillin Antitrust Litigation*, 526

F.Supp. 494, 498 (D.D.C. 1981) (Acknowledging several cases in other circuits that have

approved 40% attorneys' fees in a case approving a 45% fee). Second, courts in other college

tuition and fee refund cases have awarded one-third of the common fund for attorneys' fees. *See,*

*e.g.*; *Adavenaizz v. Howard University;* No. 1:20-cv-03792;  *Metzner v. Quinnipiac University*,

3:20-cv-00784-KAD, ECF No. 130 at ¶ 16 (D. Conn. Apr. 10, 2023); *In re Columbia University*

*Tuition Refund Action*, Case No. 20-cv-03208-JMF, ECF No. 115 at ¶ 10 (S.D.N.Y. Mar. 29,

2022); *Rosado v. Barry Univ.*, No. 20-cv-21813-JEM (S.D. Fla. Sept. 7, 2021); *Wright v.*

*Southern New Hampshire Univ.*, No. 1:20-cv-00609-LM (D.N.H. Sept. 22, 2021); *D'Amario v.*

*Univ. of Tampa*, No. 7:20-cv-03744-CS (S.D.N.Y. Oct. 18, 2022). Accordingly, this factor

weighs strongly in favor of granting Plaintiff's request of one-third of the common fund for

attorneys' fees.

**8.      The value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations**

The result here is attributable entirely to the work of class counsel. There are no other

lawsuits pending against Catholic on similar grounds and no known government agencies

conducting investigations. Accordingly, this factor weighs heavily in favor of approving the

requested fee award.

**9.      The percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained**

This factor "directs the Court to estimate what percentage fee would have been

negotiated had the case been subject to a private contingent fee arrangement from the start."

*Huffman v. Prudential Ins. Co. of Am.,* 2019 WL 1499475, at *7 (E.D. Pa. Dec. 20, 2017). Given that "Plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery," *id.*, this factor supports the reasonableness of the requested fee award.

### 10.    Any innovative terms of settlement

This factor does not weigh one way or another in the analysis.

### C.    The Requested Attorneys' Fees Are Also Reasonable Under A Lodestar Cross-Check

A lodestar cross-check further supports granting Plaintiff's request of one-third of the common fund for attorneys' fees. Courts applying the lodestar method generally apply a multiplier to account for the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved. *See In re Rite Aid Corp.*, 396 F.3d at 305–06 ("The multiplier is a device that attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work.").

The hourly billing rate to be applied is the hourly rate that is normally charged in the community where the counsel practices, *i.e.*, the "market rate." *See In re Rite Aid Corp.*, 396 F.3d at 305 ("The lodestar award is calculated by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys."). Here, the hourly rates used by Class Counsel are comparable to rates charged by attorneys with similar experience, skill, and reputation, for similar services in their respective legal markets. See Doolittle Decl. ¶ 46.[3]

---

[3] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. See *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 284 (1989) (recognizing "an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise"); *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) ("Generally, a reasonable hourly rate is to be calculated

Here, Plaintiff's counsel spent a total of 949 hours on this matter for a lodestar of $460,182.90. Accordingly, the requested fee of $666,666.66 represents a multiplier of just 1.44%, which is well within the accepted range in this Circuit. *In re Lorazepam* at 9 ("In contrast to the multipliers of 1.15 or 1.36 in this case, multiples ranging up to four are frequently awarded in common fund cases where the lodestar method is applied." (quoting *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 341 (3d Cir. 1998). Courts in this Circuit have also found a multiplier of 1.67 to be "on the low end of normal multipliers." *In re Lorazepam*, at *9 (citing *In re Medical X-Ray Film Antitrust Litigation*, 1998 WL 661515 at 7 (E.D.N.Y. 1998).

## II. THE REQUESTED REIMBURSEMENT OF COSTS AND EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

The Settlement Agreement also provides that Class Counsel may petition the Court for reimbursement of litigation of reasonable expenses incurred through the date of application, plus a reasonable estimate of additional expenses likely to be incurred through the Effective Date. Doolittle Decl., Ex. A. In common fund cases, counsel is "entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case." *In re Cendant Corp., Derivative Action Litigation*, 232 F. Supp.2d 327, 343 (D.N.J. 2002). Courts in the D.C. Circuit have granted the reimbursement of attorney costs and expenses in addition to the granting of one-third of the fund for attorneys' fees. *In re Lorazepam* at 10. For the reasons detailed below, Plaintiff's counsel seeks reimbursement of costs and expenses in the amount of $144,808.38.

---

according to the prevailing market rates in the relevant community.") [We note that in May 2024, the DC District Court judge overseeing the George Washington University tuition refund case cut class counsel's fee request from 33% to 20% because he found the use of current instead of historical rates improper].

Here, Plaintiff's counsel has incurred approximately $144,808.38 in costs and expenses. Doolittle Decl. ¶ 45. These expenses are the type that adequately reflect costs reasonably incurred in furnishing effective and competent representation—filing fees; copying costs; travel, and lodging expenses associated with out-of-town hearings, depositions and mediation; research costs; and expert witness fees.S *In re Lorazepam*, at *10 ("[T]he fact that petitioners were willing to expend their own money, as an investment whose reimbursement was entirely contingent on the success of this litigation, is perhaps the best indicator that the expenditures were reasonable and necessary.").  Accordingly, Class Counsel respectfully requests the reimbursement of costs and expenses in the amount of $144,808.38.

**III. THE REQUESTED CLASS REPRESENTATIVE AWARD REFLECTS PLAINTIFF'S ACTIVE INVOLVEMENT IN THIS ACTION AND SHOULD BE APPROVED**

Class representative awards promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits. The efforts of the Class Representative were instrumental in achieving the Settlement on behalf of the Class and justify the awards requested here. The Class Representative came forward to prosecute this litigation for the benefit of the class as a whole. She sought successfully to remedy a widespread wrong and have conferred valuable benefits upon their fellow class members. The Class Representative provided a valuable service to the class by: (a) providing information and input in connection with the drafting of the complaints; (b) overseeing the prosecution of the litigation; (c) consulting with counsel during the litigation; and (d) participating in the settlement process. Doolittle Decl. ¶ 48; *see also* Declaration of Haley Gustavson in Support of Plaintiff's Motion for Attorneys' Fees, Costs, Expenses, and Class Representative Award, ¶¶ 2-7.

A $7,500.00 Class Representative Award for the Class Representative in recognition of her services to the Class is modest under the circumstances, and well in line with awards

approved by federal courts in the D.C. Circuit.  See *Cohen v. Chilcott,* 522 F.Supp. 2d 105 (D.D.C. 2007) (approving class representative award of $7,500); *Wells v. Allstate Ins. Co.,* 557 F.Supp.2d 1 (D.D.C. 2008) (approving class representative award of $10,000); Plaintiff and Class Counsel respectfully request that the Class Representative Award of $7,500 be approved.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court (1) approve attorneys' fees, costs, and expenses in the amount of one-third of the settlement fund, or $666,666.66, and reimbursement of costs and expenses, in the amount of $144,808.38; (2) grant the Plaintiff a Class Representative Award of $7,500 in recognition of her efforts on behalf of the class; and (3) award such other and further relief as the Court deems reasonable and just.

This the 9th day of December, 2024.

*/s/ Paul Doolittle*

**POULIN | WILLEY |**
**ANASTOPOULO, LLC**
Eric M. Poulin (admitted *pro hac vice*)
Roy T. Willey, IV (admitted *pro hac vice*)
Paul Doolittle (admitted *pro hac vice*)
32 Ann Street
Charleston, SC 29403
(843) 614-8888
eric@akimlawfirm.com
roy@akimlawfirm.com
pauld@akimlawfirm.com


**DOUGLAS & BOYKIN, PLLC**
Curtis A. Boykin (Bar No. 444120)
1850 M Street, NW, Suite 640
Washington, DC 20036-5836
Telephone: (202) 776-0370
Facsimile: (202) 776-0975
Email: caboykin@douglasboykin.com
*Attorneys for Plaintiff and Putative Class*
