## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| HALEY GUSTAVSON, individually and on behalf of all others similarly situated, | Civil Action No. 20-cv-01496 |
| *Plaintiffs*, |  |
| v. |  |
| THE CATHOLIC UNIVERSITY OF AMERICA, |  |
| *Defendant*. |  |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Dated: January 9, 2025

____*/s/ Paul Doolittle*____

**POULIN | WILLEY | ANASTOPOULO, LLC**
Paul Doolittle (admitted *pro hac vice*)
32 Ann Street
Charleston, SC 29403
(843) 222-2222
pauld@akimlawfirm.com

**DOUGLAS & BOYKIN, PLLC**
Curtis A. Boykin (Bar No. 444120)
1850 M Street, NW, Suite 640
Washington, DC 20036-5836
Telephone: (202) 776-0370
Facsimile: (202) 776-0975
Email: caboykin@douglasboykin.com
*Attorneys for Plaintiff and Putative Class*

## TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ............................................... 1

I. FACTUAL BACKGROUND ................................................................................ 1

II. PROCEDURAL BACKGROUND ...................................................................... 2

III. KEY TERMS OF THE SETTLEMENT .................................................................4

    A. THE CLASS DEFINITION .................................................................4

    B. MONETARY RELIEF .........................................................................5

    C. RELEASE .............................................................................................5

    D. NOTICE AND ADMINISTRATION EXPENSES ............................5

    E. OPT-OUTS AND OBJECTIONS .......................................................6

    F. CLASS REPRESENTATIVE AWARD, ATTORNEYS' FEES, COSTS, AND EXPENSES ...........7

ARGUMENT ........................................................................................................... 8

    I.      THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED .................8

    II.     THE NOTICE PLAN COMPORTS WITH DUE PROCESS ..............................8

    III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED BY THIS COURT .................10

        A. The Rule 23(e)(2) Factors ................................................................. 10

            1)    The Class Representatives And Class Counsel Have Adequately Represented The Class ...............11

            2)    The Settlement Was Negotiated at Arms Length ....................11

            3)    The Relief Provided For The Class Is Adequate ...........................12

            4)    The Proposal Treats Class Members Equitably Relative To Each Other ...........................12

        B. The *Girsh* Factors ...........................................................................12

            1)    Complexity, Expense, and Likely Duration of the Litigation ..............13

            2)    The Reaction of the Class to the Settlement .....................14

3)  The Stage of the Proceedings and the Amount
    of Discovery Completed……………………………...………………14

4)  Plaintiff Would Face Real Risks if the Case Proceeded………….……..15

5)  Defendant's Ability to Withstand a Greater Judgment…………….…….16

6)  The Settlement is Fair, Reasonable and Adequate…………...…………16

CONCLUSION…………………………………………...…………………………17

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*Adavenaizz v. Howard University*;
No. 1:20-cv-03792……...……………………………………………………...………12

*D'Amario v. The University of Tampa*,
No. 7:20-cv-03744-CS (S.D.N.Y.)…………………………………………………………12

*Eisen v. Carlisle & Jacquelin*
417 U.S. 156, 173 (1974)……………………….…………………………………………….8

*Girsh v. Jepson*,
521 F.2d 153 (3d. Cir. 1975) .........................................................12-14, 16-17

*In re Baan Co. Securities Litigation*,
284 F.Supp. 2d 62 (D.D.C. 2003)………………….…………………………………13, 16

*In re Federal National Mortgage Association Securities, Derivative and ERISA Litigation*,
4 F.Supp. 3d 94, 103 (D.D.C. 2013)………………………………………………………16

*In re Ins. Brokerage Antitrust Litig.*,
282 F.R.D. 92, 103 (D.N.J. 2012)…………………………………………………………14

*In re Lorazepam & Clorazepate Antitrust Litig.*,
205 F.R.D. 369, 375 (D.D.C.2002)………………………………………..…………10, 15, 17

*In re: McCormick and Company, Inc. Pepper Products Marketing and Sales Litigation*
422 F.Supp. 3d 194, 237 (D.D.C. 2019)…………………………...………………………16

*In re Newbridge Networks Securities Litigation*,
1998 WL 765724 (D.D.C. 1998)……………………………………………........13, 15, 16

*In re Prudential Ins. Co. Am. Sales Practice Litig.*,
148 F.3d 283, 318 (3d Cir. 1998),…………………..………………………………………14

*In re Vitamins*,
305 F.Supp. 2d 100, 105 (D.D.C. 2004)……………………………………....…………15

*Martin v. Lindenwood Univ.*,
No. 4:20-cv-01128-RLW (E.D. Mo.)……………………………………..…………………12

*Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*,
565 F.Supp.2d 49, 54 (D.D.C.2008)………………………………………...…………10, 13

*Mercier v. United* States,
156 Fed. Cl. 580, 584 (2021)…………………………………..…………………..…………12

Metzner v. Quinnipiac University,
  3:20-cv-00784-KAD (D. Conn.)…………………...………………………………………..12

*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306, 314 (1950)…………………………………………..…………………………..8

*Osher v. SCA Realty I, Inc.*,
945 F.Supp. 298, 304 (D.D.C.1996)…………………………………...…………13, 16

*Pigford v. Glickman*,
185 F.R.D. 82, 103 (D.D.C.1999)…………………………………………...…………10

*Rosado v. Barry Univ., Inc.*,
No. 1:20-cv-21813-JEM (S.D. Fla. Mar. 30, 2021)……………………………….…………12

*Smith v. The University of Pennsylvania*,
No. 2:20-cv-02086-TJS………………………….……………………………..…12

*United States v. District of Columbia*,
933 F.Supp. 42, 47 (D.D.C.1996)…………………………………………….…………10

*Wright v. S. New Hampshire Univ.*,
  2021 WL 1617145 (D.N.H. Apr. 26, 2021) .................................................................12

**SECONDARY SOURCES**

Fed. Judicial Ctr., *Judges' Class Action Notice and
Claims Process Checklist and Plain Language Guide 3* (2010)………..……………..……………8

Manual for Complex Litigation, Fourth § 21.312 (2004)…………..…………...……………8

## INTRODUCTION

Plaintiff Haley Gustavson individually and as the Class Representative, hereby moves for a final order approving the Class Action Settlement Agreement between Plaintiff and Defendant The Catholic University of America ("Catholic" or "Defendant").

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    FACTUAL BACKGROUND

Plaintiff is a former student at Catholic who alleges that Defendant failed to "issue appropriate refunds for the Spring 2020 semester after cancelling in-person classes and changing all classes to an online/remote format . . . as a result, of the Novel Coronavirus Disease." Second Amended Class Action Complaint (ECF No. 78) ("CAC"), ¶ 1. Plaintiff further alleges that Catholic "deprived Plaintiffs and other members of the Classes from recognizing the benefits of on-campus enrollment . . . in exchange for which they had already paid . . . tuition." *Id.* ¶ 2. The CAC also alleges that Catholic breached a contract with Plaintiff when failing to provide Plaintiff with a refund for tuition. *See, e.g., id.* ¶¶ 132. In addition, Plaintiff alleges that Catholic breached its contractual obligations with students by failing to refund Plaintiff and other students for mandatory fees such as the Activities Fee and Technology Fee, the benefits of which were not enjoyed by the Plaintiff after the cancellation of in-person activities and classes. ¶¶ 168. Defendant disputes Plaintiff's allegations and denies all claims of wrongdoing.

## II.    PROCEDURAL BACKGROUND

Plaintiff Daniella Montesano filed a putative class action complaint in this Court on June 8, 2020.  ECF No. 1. Catholic moved to dismiss the complaint on August 17, 2020.  ECF No. 16.  In response, Plaintiff Montesano filed an Amended Class Action Complaint on August 31, 2020.  ECF No. 17. On September 18, 2020, Catholic moved to dismiss the Amended Class Action Complaint.  ECF No. 20. Plaintiff Montesano filed her Response on October 9, 2020.  ECF No. 21.  Catholic filed its reply on October 16, 2020.  ECF No. 22.  On July 9, 2021, the Court entered its Memorandum Opinion and Order denying the Defendant's Motion to Dismiss.  ECF No. 39.

On July 23, 2021, Catholic filed its Motion for Certification of Interlocutory Appeal and Motion to Stay regarding the Court's denial of its Motion to Dismiss.  ECF No. 41.  Plaintiff Montesano filed her Response to this Motion on August 6, 2021.  ECF No. 43.  On September 3, 2021, the Court granted Catholic's Motion for Certification of Interlocutory Appeal and Motion to Stay the Case Pending Appeal.  ECF No. 45.  On November 17, 2021, the D.C. Circuit denied Catholic's Petition for Leave to File An Interlocutory Appeal.  ECF No. 46.  On May 24, 2022, Catholic filed a Partial Motion to Dismiss the Amended Class Action Complaint and  Answer to Plaintiff's Amended Class Action Complaint.  ECF Nos. 51 and 52.  Plaintiff Montesano filed her Response to the Partial Motion to Dismiss on June 7, 2022.  ECF No. 55.  Catholic replied in support of its motion on June 14, 2022.  ECF No. 57.  In a June 22, 2022 text-only Order, the Court denied Catholic's Partial Motion to Dismiss.  On August 24, 2022, Catholic filed a Motion for Judgment on the Pleadings.  ECF No. 64.  Plaintiff Montesano filed her Response on September 14, 2022.  ECF No. 66.  Catholic replied in support of its motion on September 28, 2022.  ECF No. 67.  The Court denied Catholic's Motion for Judgment on the Pleadings on October 26, 2022. ECF No. 69.

The parties began conducting discovery during the summer of 2022. Catholic responded to interrogatories, document requests, and requests for admission, and produced a significant volume of documents (over 44,000 pages in total), including documents relating to its transition to remote instruction during the Spring 2020 semester and the financial impact of the COVID-19 pandemic on Catholic, as well as documents relating to Plaintiff Montesano.

On May 23, 2023, Plaintiff Montesano filed a Motion for Leave to File Amended Complaint and Motion to Substitute Plaintiff Haley Gustavson for Plaintiff Montesano. ECF No. 74. Catholic filed its Response in Opposition to this Motion on June 6, 2023. ECF No. 75. Plaintiff Montesano filed a reply in support of her motion on June 9, 2023. ECF No. 77. On August 10, 2023, in a text-only Order, the Court granted Plaintiff Montesano's Motion for Leave to File Amended Complaint and Motion to Substitute Plaintiff. On August 10, 2023, Plaintiff Gustavson filed her Second Amended Class Action Complaint. ECF No. 78. Catholic filed its Answer to Second Amended Class Action Complaint on August 24, 2023. ECF No. 80. Catholic made an additional production of documents to Plaintiff Gustavson.

On November 15, 2023, the Parties filed a Joint Motion to Stay Proceedings asking the Court to stay the case until March 8, 2024 to allow them to discuss settlement. ECF No. 81. The Court entered a text-only order on November 29, 2023 referring the case to Magistrate Judge Michael Harvey for mediation. The Court directed the parties to report to the Court on or before March 17, 2024, as to the status of the mediation. On March 15, 2024, April 14, 2024, May 15, 2024, June 14, 2024, and July 15, 2024, the Parties filed a Joint Status Report in which they reported that the parties were actively negotiating settlement papers and requested that the Court continue to stay the case. ECF Nos. 84, 85, 86, 87, 88, 91. On August 14, 2024, the parties filed another Joint Status Report and again asked the Court to continue the stay, but only until August

28, 2024, explaining that they were in the process of securing signatures for the settlement agreement. ECF No. 93. In the weeks following, the parties signed the full-form Settlement Agreement. On August 29, 2024, Plaintiff filed her Motion for Preliminary Approval of Class Settlements. ECF No. 95. On September 19, 2024, the Court entered an Order granting preliminary approval of class settlement. ECF No. 98.

## III.    KEY TERMS OF THE SETTLEMENT

The key terms of the Settlement are briefly summarized as follows:

### A.  The Class Definition

The "Settlement Class" is defined as all students

enrolled in the Spring 2020 Semester who did not withdraw by March 18, 2020, for whom any amount of tuition and/or fees was paid to Catholic from any source other than a scholarship, grant or tuition remission from Catholic, and whose tuition and/or fees have not been fully refunded by Catholic. Excluded from the Settlement Class are (i) any students who received full scholarships, grants or tuition remission from Catholic and thus did not pay any tuition or fees for the Spring 2020 Semester; (ii) the University and its officers, trustees and their family members; (iii) Class Counsel; (iv) the Judge presiding over the Action; and (v) all persons who properly execute and file a timely opt-out request to be excluded from the Settlement Class.

Settlement Agreement (ECF No. 97 ¶ 33).

"Settlement Class Member" means a person who comes within the definition of the Settlement Class. (ECF No. 97 ¶ 34).

### B.  Monetary Relief

The Settlement creates a $2 million non-reversionary common fund from which cash awards will be paid to Settlement Class Members as well as Settlement Administration Expenses,

any class representative award to the Class Representative, and any attorneys' fees or expenses awarded to Class Counsel. *See* Declaration of Paul Doolittle ¶ 30. Each Settlement Class Member will automatically receive an equal cash payment from the Settlement Fund, which is calculated by dividing the Net Settlement Fund by the number of Settlement Class Members who did not ask to be excluded from the Settlement. *Id*. The Notice gave Settlement Class Members the ability to opt via an Election Form to receive a Cash Award by Check, Venmo, or PayPal. *Id*. In the event a Settlement Class Member did not submit an Election Form, the Settlement Class Member will receive a Cash Award in the form of a check sent to the Settlement Class Member's last known address. *Id* at ¶ 40.

### C. Release

In exchange for the relief described above, the obligations incurred pursuant to this Settlement Agreement shall be a full and final disposition of the Action and any and all Released Claims, as against all Released Parties. *Id*. ¶ 36. Upon the Effective Date, the Releasing Parties, and each of them, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties, and each of them. *Id*. ¶ 36.

### D. Notice and Administration Expenses

The Class Notice has been timely disseminated in accordance with the schedule and procedure directed in the Court's Preliminary Approval Order. ECF No. 98. Doolittle Decl. ¶ 39-40; *see generally* ECF No. 100-1, Declaration of Shelby Alvey Regarding Notice and Settlement Administration. Class Notice was timely emailed or sent via First Class U.S. Mail to 5,070

Settlement Class Members identified using Defendant's records.[1]  Alvey Decl., ¶¶ 7-11; Doolittle Declaration ¶¶ 39-40.

In addition, the Settlement Administrator has established a Settlement website (CUACovidTuitionSettlement.com) with substantial information including: (1) details regarding the lawsuit, the Settlement and its benefits, and the Settlement Class Members' legal rights and options including objecting to or requesting to be excluded from the Settlement and/or not doing anything; (2) instructions on how and when to submit an Election Form; (3) instructions on how to contact the Settlement Administrator by mail or telephone; (4) copies of the Second Amended Complaint, the Settlement Agreement; the Preliminary Approval Order, the Election Form, and the Long Form Notice; (5) important dates pertaining to the Settlement including the deadline to opt-out of or object to the Settlement, the Election Form submission deadline, the Fairness Hearing date, place and time; and (6) answers to Frequently Asked Questions.  *See* Alvey Decl. ¶¶ 12-14.

The Settlement Fund will be used to pay the cost of Settlement Administration Expenses, which includes sending the Notice set forth in the Agreement and any other notices as required by the Court, as well as all costs of administering the Settlement.  Doolittle Decl., Ex. A. ¶ 9.

**E.  Opt-Outs and Objections**

Pursuant to the Settlement Agreement and Preliminary Approval Order, any Settlement Class Member who wishes to opt-out of the Settlement Class is required to do so in accordance with the procedure and deadline set forth therein.  *See* Prelim. Approval Order, ¶ 16.  The opt-out deadline was ninety-five (95) days after preliminary approval, or December 23, 2024.  *Id*.  There are zero opt-outs as of the date of this filing.  Alvey Decl., ¶¶ 14-17.  Settlement Class Members who did

---

[1] Of the Notices emailed to Settlement Class Members, 16 were undeliverable. Alvey Decl. ¶ 9. Of the Notices mailed to Settlement Class Members, 7 were returned as undeliverable. Alvey Decl. ¶ 11.

not submit timely and proper opt-out requests are deemed to be part of the Settlement Class, and thus bound by all subsequent proceedings, orders and judgments.

Also pursuant to the Settlement Agreement and Preliminary Approval Order, any Settlement Class Member who did not request to opt-out of the Settlement was duly afforded the right to object to the Settlement and/or to the requested attorneys' fees and expense award and Class Representative award. To object, the Settlement Class Member was required to comply with the procedures and deadline set forth therein. *See* Prelim. Approval Order, ¶ 21. The written objection was required to be filed with the Court or, for *pro se* objectors, mailed to the Court, Class Counsel, and defense counsel. *Id.* There are zero objectors to the Settlement as of the date of this filing. Alvey Decl. ¶¶ 14-17.

### F. Incentive Awards, Attorneys' Fees, Costs, and Expenses

In recognition for their efforts on behalf of the Settlement Class, Catholic has agreed that Plaintiff Haley Gustavson may receive, subject to Court approval, a class representative award of $7,500 from the Settlement Fund, as appropriate compensation for her time and effort serving as Class Representative and as a party to the Action. Doolittle Decl. Ex. A., Settlement ¶ 10. Catholic has agreed that Plaintiff's Attorneys may receive from the Settlement Fund, subject to Court approval, attorneys' fees not to exceed 33.33% of the Settlement Fund (or $666,666.66). *Id.*, ¶ 10. Plaintiff's attorneys have sought $144,808.38 in costs and expenses from the Settlement Fund, subject to Court approval. *Id.* Plaintiff has moved separately for attorneys' fees, costs and a class representative award. (ECF No. 99).

## <u>ARGUMENT</u>

## I.    THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

This Court's Preliminary Approval Order (ECF No. 98) conditionally certified a class for settlement purposes. Under Federal Rule of Civil Procedure 23, a class action may be

maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Here, all Rule 23 requirements have been met. The Court was correct in conditionally certifying the Class for settlement purposes pursuant to Rules 23(a) and 23(b), and nothing has changed to alter the propriety of the Court's certification. Accordingly, for the reasons set forth in Plaintiff's Motion for Preliminary Approval and the Court's Preliminary Approval Order, the Court should now grant final certification of the Settlement Class.

## II.    THE NOTICE PLAN COMPORTS WITH DUE PROCESS

Due process and Rule 23 require that the notice provided to the Settlement Class be "the best notice that is practicable under the circumstances, including individual notices to all members who can be identified through reasonable effort." Fed R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin* 417 U.S. 156, 173 (1974). The most practicable notice is that which is "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The Federal Judicial Center notes that a Notice Plan is reasonable if it reaches at least 70% of the Class. See Fed. Judicial Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3* (2010).

The notice of class settlement should: define the class; describe clearly the options open to class members and the deadlines for taking action; describe essential terms of the proposed settlement; disclose any special benefits provided to the class representatives; provide attorneys' fees information; indicate the time and place of the hearing considering approval of the settlement; explain procedures for the entitlement to payment of claims; and, display the contact information for inquiries. MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.312 (2004).

Here, the Notice Plan meets the above-mentioned standards. The Notice Plan provided direct notice via e-mail or first class mail to over 99% of the Settlement Class. *See* Doolittle Declaration, ¶ 40, Alvey Declaration, ¶¶ 7-11. Further, the approved Notice advised the Settlement Class of the Settlement Class definition, the essential terms of the settlement, the proposed attorneys' fees and class representative award, and it also advised Settlement Class Members of their rights, including the right to be excluded from, comment upon, and/or object to the Settlement Agreement or any of its terms. Doolittle Decl. ¶¶ 39-40; Alvey Declaration ¶ 6. At preliminary approval, the Court approved the parties' Notice Plan, finding it met the requirements of Rule 23 and due process. *See* Preliminary Approval Order, ¶ 12. The Plan has now been fully carried out by a professional settlement administrator, Simpluris. Doolittle Decl., ¶ 40; *see generally* Alvey Decl. Pursuant to the Settlement, Defendant provided Simpluris a list of 5,070 available names, addresses and emails of potential Settlement Class Members derived from Defendant's records.[3] *See* Alvey Decl. ¶¶ 7. On October 18, 2024, Simpluris sent Email Notices to 4,343 potentially valid Class Member email addresses. Sternberg Decl. ¶ 10. A total of 4,327 Email Notices were delivered. *Id.* ¶ 9. Simpluris also sent Postcard Notice to the 741 Settlement Class Members provided in the Class List without an email address. *Id*. In total, Simpluris mailed 741 Postcard Notices, of which only 27 were undeliverable. *Id*.

The Notice also directed Settlement Class Members to the Settlement website, where they were able to access important court filings, including the Motion for Attorneys' Fees, Costs, Expenses, and Inventive Awards and all related documents; and see deadlines and answers to frequently asked questions. *Id.* ¶ 12. Given the broad reach of the Notice, and the comprehensive information provided therein, due process and Rule 23 requirements are met.

### III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED BY THIS COURT

The Court has the discretion to approve or reject the proposed settlement. *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 375 (D.D.C.2002). When deciding whether to grant approval, the Court must strike a balance between a rubber stamp approval and "the detailed and thorough investigation that it would undertake if it were actually trying the case." *Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 565 F.Supp.2d 49, 54 (D.D.C.2008) (internal citation omitted). Although the Court should undertake careful scrutiny of the settlement terms, the discretion to reject a settlement is "restrained by the 'principle of preference' that encourages settlements." *In re Lorazepam*, 205 F.R.D. at 375 (quoting *Pigford v. Glickman*, 185 F.R.D. 82, 103 (D.D.C.1999)); *see also United States v. District of Columbia*, 933 F.Supp. 42, 47 (D.D.C.1996).

### A.    The Rule 23(e)(2) Factors

Rule 23(e)(2) requires the Court to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Here, the settlement checks all of these boxes.

### 1) The Class Representatives And Class Counsel Have Adequately Represented The Class

First, as explained in Plaintiff's Motion for Attorneys' Fees, Costs, Expenses, And Class Representative Award (ECF No. 99), the class representative and class counsel have adequately represented the class. Class Counsel are experienced lawyers who diligently pursued the claims on behalf of the Class. Accordingly, as the Court already held in issuing its Order granting preliminary approval (ECF No. 98), "Class Counsel will fairly and adequately protect the interests of the members of the Settlement Class." *See* Preliminary Approval Order ¶ 10.

### 2) The Settlement Was Negotiated At Arm's Length

After over three years of litigation, plus mediation, the parties negotiated for months in good faith. Doolittle Decl. ¶¶ 30. These negotiations were informed both by the discovery in this case as well as by the lawyers' experience, giving rise to the presumption that the settlement is fair and reasonable.

### 3) The Relief Provided For The Class Is Adequate

The settlement of $2.0 million falls squarely within the range established by previous, similar settlements that have been finally approved in the COVID-19 tuition and fee refund context. *See, e.g., Adavenaixx v. Howard University*; No. 1:20-cv-03792; ($2,073,680 common fund); *Smith v. The University of Pennsylvania*, No. 2:20-cv-02086-TJS ($4.5MM common fund); *Wright v. S. New Hampshire Univ.*, No. 1:20-cv-00609-LM (D.N.H.) ($1.25MM common fund); *Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM (S.D. Fla.) ($2.4MM

common fund); *Martin v. Lindenwood Univ.*, No. 4:20-cv-01128-RLW (E.D. Mo.) ($1.65MM

common fund); *D'Amario v. The University of Tampa*, No. 7:20-cv-03744-CS (S.D.N.Y.)

(3.4MM common fund) ($3.4MM common fund); and *Metzner v. Quinnipiac University*, 3:20-

cv-00784-KAD (D. Conn.) ($2.5MM common fund). What is more, Settlement Class Members

will automatically receive an equal cash payment unless they exclude themselves from the

Settlement.

### 4) The Proposal Treats Class Members Equitably Relative To Each Other

Each Settlement Class Member will automatically receive an equal cash payment from

the Settlement Fund.  See Doolittle Declaration Exhibit A at ¶ 2.

### B. The *Girsh* Factors

To determine whether a settlement is fair, reasonable, and adequate, the Court looks to

the "paramount twin elements of procedural and substantive fairness."  *Mercier v. United* States,

156 Fed. Cl. 580, 584 (2021).   In evaluating the substantive fairness of a class action settlement,

courts in the D.C. Circuit consider the nine factors set forth in *Girsh v. Jepsen*, 521 F.2d 153 (3d

Cir. 1975).  See *In re Newbridge Networks Securities Litigation*, 1998 WL 765724 (D.D.C.

1998) (applying *Girsh* factors).  The *Girsh* factors are:

> (1) the complexity, expense, and likely duration of the litigation,
> (2) the reaction of the class to the settlement, (3) the stage of the
> proceedings and the amount of discovery completed, (4) the risks
> of establishing liability, (5) the risks of establishing damages, (6)
> the risks of maintaining the class action through the trial, (7) the
> ability of the defendants to withstand a greater judgment, (8) the
> range of reasonableness of the settlement fund in light of the best
> possible recovery, and (9) the range of reasonableness of the
> settlement fund to a possible recovery in light of all the attendant
> risks of litigation.

*See id.* at 158.

There is no single test in this Circuit for determining whether a class action settlement should be approved under Rule 23(e), and courts in the circuit have considered all of the above factors.  See *Meijer, Inc. v. Warner Chilcott Holdings, Co. III, Ltd.* 565 F.Supp. 49, 54 (D.D.C. 2008).  Here, taken together, the *Girsh* factors and Rule 23(e)(2) weigh heavily in favor of preliminarily approving the proposed Settlement.

### 1.    Complexity, Expense, and Likely Duration of the Litigation

"[I]n the context of class actions, settlement is particularly appropriate given the litigation expenses and judicial resources required in many such suits." *Osher v. SCA Realty I, Inc.*, 945 F.Supp. 298, 304 (D.D.C.1996). Courts in this Circuit have consistently found that the resolution of class actions is preferable to the continuation of lengthy and expensive litigation with uncertain or possibly inconsistent results. *In re Baan Co. Securities Litigation,* 284 F.Supp. 2d 62 (D.D.C. 2003); *see also In re Newbridge Networks Securities Litigation* 1998 WL 765724 (D.D.C. 1998).  Here, continuing this case would require significant time and expense. Remaining steps would likely include: (1) Plaintiff's motion for class certification; (2) Catholic's motion for summary judgment; (3) the Parties' competing motions to strike each other's experts; (4) trial; and (5) appeal. Settlement at this juncture thus provides a prompt resolution of this action as compared to the alternative.

### 2.    The Reaction of the Class to the Settlement

The second *Girsh* factor "attempts to gauge whether members of the class support the settlement," *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 318 (3d Cir. 1998), and the Class's support "creates a strong presumption . . . in favor of the Settlement." *In re Cendant*, 264 F.3d at 235.  A "small number of objections by Class Members to the Settlement weighs in favor of approval." *In re Ins. Brokerage Antitrust Litig*., 282 F.R.D. 92, 103 (D.N.J. 2012) (citations omitted).

Here, the reaction of the Class Members to the Settlement has been overwhelmingly positive. Class Notice has been provided to the Settlement Class Members in accordance with the requirements of Rule 23(c)(2)(B) and the Preliminary Approval Order. *See* Doolittle Decl. ¶¶ 39-40; Alvey Decl. ¶ 6. Zero objected to the Settlement, and none have opted out. Doolittle Decl. ¶ 41-42; Allvey Decl. ¶¶ 14-17. This exceptional participation rate and lack of objections leave no question that the Settlement Class Members view the Settlement favorably, weighing heavily in favor of final approval.

### 3.    The Stage of the Proceedings and the Amount of Discovery Completed

This factor guides courts to assess "whether counsel had sufficient information, through adequate discovery, to reasonably assess the risks of litigation vis-à-vis the probability of success and range of recovery." *In re Lorazepam*, 2003 WL 22037741, at *4. Evaluation of this factor involves a balance between a settlement not being "too early to be suspicious" and "too late to be a waste of judicial resources." *In re Vitamins*, 305 F.Supp. 2d 100, 105 (D.D.C. 2004). Courts in this Circuit have held that the point in the litigation in which motions are still pending before the Court and the possibility of dismissal or summary judgment still alive as a "desirable point in the litigation for the parties to reach an agreement." *Id.* Here, having briefed a motion to dismiss, a motion for judgment on the pleadings, and a 28 U.S.C. § 1292(b) motion, and engaged in a significant amount of discovery, Class Counsel are sufficiently well informed of the merits of the claims as well as the strengths and weaknesses of Catholic's arguments and affirmative defenses. With the possibility of dismissal of Plaintiff's claims or a large verdict against Catholic still possible at this stage of the litigation, settlement at this juncture is not only appropriate but desirable.

4.        **Plaintiff Would Face Real Risks if the Case Proceeded**

Although Plaintiff believes her case is strong, it is not without risk. To prevail in this action, Plaintiff would not only have to prove Catholic's liability pursuant to the causes of action in the class complaint, but also have to prove damages, and that said damages were caused by the Catholic's conduct.  "There is intrinsic difficulty in proving liability."  *In re Newbridge*, 1998 WL 765724 at *2.  Here, Plaintiff and the putative Class face risks at every juncture, including: (1) class certification (2) Catholic's likely motion for summary judgment; (3) the Parties' competing motions to strike each other's experts; (4) trial; and (5) appeal. Each of these steps would pose significant risks to the Settlement Class Members that could result in them recovering nothing at all. The proposed settlement eliminates these risks while providing relief that is fair, reasonable and adequate.

5.        **Catholic's Ability to Withstand a Greater Judgment**

"This *Girsh* factor addresses whether the defendant could withstand a judgment for an amount significantly greater than the Settlement." *Osher v. SCA Realty I, Inc.*, 945 F.Supp. 298, 306 (D.D.C. 1996).  Here, while Catholic may be able to withstand a greater judgment, that does not weigh against preliminary approval. *Id.* ("In this case, this factor does not come into play as the defendants have considerable assets and could withstand the relief sought by the plaintiff Class.").  Thus, at worst, this factor is neutral.

6.        **The Settlement is Fair, Reasonable and Adequate**

"The last two *Girsh* factors evaluate [the] … reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *In re Newbridge,* 1998 WL 765724 at 1.   Evaluation under this factor is "an exercise which necessarily involves evaluating the strengths and weaknesses of plaintiffs' case." *In re Federal*

*National Mortgage Association Securities, Derivative and ERISA Litigation*, 4 F.Supp. 3d 94, 103 (D.D.C. 2013).  Courts in this Circuit have found the comparison of the settlement with the plaintiff's possible recovery at trial to be "most important factor."  *Id.*   In *In re Federal National Mortgage,* the D.C. District held that the $153 million settlement was within the 4 to 8% range of the plaintiff's "best case scenario" amount of recovery if they prevailed at trial. *Id.*  The court found that "4 to 8%" of possible recovery range to be comparable to other approved settlements. *Id.  See In re Baan Co. Sec. Litig*., 288 F.Supp.2d 14, 17 (D.D.C. 2003) (noting the median settlement "in similar [securities fraud] class actions brought under the PSLRA" is 3.6% of estimated damages); *In re Newbridge Networks Sec. Litig.,*1998 WL 765724, at *2, (D.D.C. Oct. 23, 1998) (finding "an agreement that secures roughly six to twelve percent of a potential trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness").

Here, the total settlement value is $2.0 million.Importantly, the $2.0 million settlement value represents approximately 3% of the maximum potential recovery which squarely falls into percentage ranges approved by Courts in this Circuit.

Weighing the benefits of the Settlement against the risks associated with proceeding in litigation and in collecting on any judgment, the Settlement is more than reasonable. Moreover, as stated above, this Circuit recognizes a policy encouraging class action settlements.  *In re Lorazepam*, 205 F.R.D. at 375. In addition, this Settlement treats Settlement Class Members equitably because they will each be given an equal share of the common fund.

In sum, the Rule 23(e)(2) factors and the *Girsh* factors weigh overwhelmingly in favor of approval.  Because the settlement is "fair, reasonable, and adequate," the Court should grant final approval.  *In re Cendant*, 264 F.3d at 243.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that the Court grant her

Motion for Final Approval of the Settlement and enter the proposed Final Judgment and Order of

Dismissal with Prejudice submitted herewith.

Dated:  January 9, 2025

Respectfully submitted,


*/s/ Paul Doolittle*
**POULIN | WILLEY |
ANASTOPOULO, LLC**
Paul Doolittle (admitted *pro hac vice*)
32 Ann Street
Charleston, SC 29403
(843) 222-2222
pauld@akimlawfirm.com

**DOUGLAS & BOYKIN, PLLC**
Curtis A. Boykin (Bar No. 444120)
1850 M Street, NW, Suite 640
Washington, DC 20036-5836
Telephone: (202) 776-0370
Facsimile: (202) 776-0975
Email:  caboykin@douglasboykin.com


*Attorneys for Plaintiff and Putative Class*

17